### No. 23,468.

THE PARKERSBURG RIG & REEL COMPANY, *Appellee,* v. THE FREED OIL & GAS COMPANY, *Appellant.*

#### SYLLABUS BY THE COURT.

1. CONTRACT—*Construction of Oil Tanks—Implied Warranty.*· The plaintiff furnished material and labor and constructed oil tanks on defendant's leased premises under an agreement that each would hold 1,600 barrels of oil. One of them burst when it was filled with oil. *Held,* following *Tank Co. v. Oil Co.,* 108 Kan. 690, that plaintiff impliedly warranted that the tanks should be reasonably fit for the purpose for which they were sold.

2. SAME—*Care in Selecting Material for Tanks.* The fact that plaintiff used care in selecting material used in building the tanks did not relieve the plaintiff from liability on its implied warranty.

3. SAME—*No Defense for Breach of Implied Warranty.* The defendant was not required to anticipate the negligence of the plaintiff in the construction of the tanks, and the latter cannot lessen ·its liability for a loss of oil resulting from the defective tank because defendant did not construct embankments to hold the oil which escaped and was lost when the tank collapsed.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed April 8, 1922. Reversed.

. W. N. Banks, and O. L. O'Brien, both of Independence, for the appellant.

T. A. Kramer, George J. Benson, both of El Dorado, and O. A. Morton, of Tulsa, Okla., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the Parkersburg Rig & Reel Company to recover $1,050 from the Freed Oil & Gas Company, and to foreclose a mechanic's lien on the premises of defendant, upon which tanks had been erected.

The defense was that the plaintiff was informed of the purpose for which the tanks were purchased and undertook to build structures fit for that purpose, but it was alleged that one of the tanks by reason of defective material and workmanship collapsed shortly after it was filled with oil with the result of a loss of 4,445 barrels of crude oil, for the loss of which defendant asked a judgment against plaintiff for $1,300. In a trial with a jury the plaintiff was awarded a judgment for $1,132.25 and the foreclosure of a mechanic's lien was adjudged. Defendant appeals.

There was no express warranty of the tanks constructed, but defendant contends that there was an implied warranty by plaintiff that the tanks were to be sufficient to hold oil and that when the tank collapsed the warranty was broken and the plaintiff became responsible for the consequent loss. It appears that the material, which is composed mainly of staves and hoops, is purchased by the plaintiff in quantities and that these were cut in the lengths required at plaintiff's plant and shipped out to that part of the oil field operated by the defendant. There the staves were cut and fitted and the strips of iron were made into hoops by riveting the ends together. In the course of construction if the plaintiff's workmen found a defective stave it was thrown out, and if any of the hoop iron was found to be weak or defective, that part was not used. The plaintiff then built a base upon which the tank was constructed. Large hoops were used at the bottom of the tanks and above that smaller sizes were used. When the tanks were set up they were immediately filled with oil and within a few hours one of them bursted, and the oil sank into the ground. It was found that some of the hoops were pulled apart where they had been spliced or riveted together, and others had burst at places other than the joints, and a number of staves had broken.

Plaintiff contends that the tanks were sold as specific finished articles of merchandise and that the defendant had an opportunity

to inspect them when they were erected and purchased them on its own judgment and at its own risk. In the agreement of purchase there were no specifications made as to the kinds of wood and iron that were to be used nor as to the methods of construction. The only provision was that they were to be of a certain size capable of holding 1,600 barrels of oil. The plaintiff was informed of the purpose for which the tanks were to be used. It held itself out as a competent tank builder, it selected the material and constructed the tanks upon its own plans and undertook to build tanks that would hold the quantities of oil mentioned, and it is claiming a mechanic's lien for constructing the tanks. The facts bring the case clearly within the rule stated in *Tank Co. v. Oil Co.*, 108 Kan. 690, 196 Pac. 1111. There it was held that—

"A tank company which, under contract with an oil company, furnishes material and labor and constructs a 1,600-barrel tank for the storage of oil on the oil company's premises, impliedly warrants that the tank shall be reasonably fit for the purpose for which it was sold." (Syl. ¶ 1.)

That decision settles the principal contention in the present case and there is no occasion for further discussion as to the existence or effect of the implied warranty. It follows from the decision and the authorities cited therein that plaintiff impliedly warranted that the tank purchased was reasonably fit for the special purpose for which it was intended. The test of fitness by use showed that either by reason of defective material or improper construction the tank did not meet the requirements of the contract and the plaintiff became liable for a breach of the implied warranty.

There was error in the instructions in effect charging that the implied warranty did not cover defects which defendant could have discovered by the exercise of ordinary prudence, and that if it accepted and used the tank without objection it waived the right to rely on the warranty as to the defects which might have been discovered by the defendant by the exercise of ordinary care and prudence. There was no basis for placing this limitation on the liability under the warranty. The defendant had nothing to do with the selection of material out of which the tank was built nor with the plans and specifications upon which it was built, neither had it any part in its construction. No claim is made of an improper use of the tank by the defendant nor that it collapsed through the fault of the defendant. It contracted for and plaintiff undertook to build a tank that would hold 1,600 barrels of oil. The defendant trusted

the judgment and skill of the plaintiff in constructing one fit for that purpose. Defendant had no opportunity and was under no obligation to inspect either material or workmanship employed in its construction. He could only learn of the weakness and unfitness of the tank by the test of use and, as we have seen, it collapsed shortly after it was first filled with oil. It is clear that there was an implied warranty and the plaintiff was responsible for the bursting of the tank unless it occurred through some fault of the defendant. In *Tank Co. v. Oil Co.*, supra, the court in speaking of latent defects said:

"Unless hidden defects frustrating purpose were embraced, the warranty had no function to perform, and a choice must necessarily be made between warranty and no warranty." (p. 693.)

In referring to the liability of the builder of a tank in such a case, it was remarked:

"Assuming the tank collapsed within that time, the tank company's liability became absolute, unless it could establish its defense that the accident occurred through fault of the oil company. The tank did not stand up, the warranty was broken, and due care in selecting material and in building the tank was not a defense." (p. 693.)

At the opening of the trial the court permitted the plaintiff to amend its reply by alleging that if defendant suffered any loss by the bursting of the tank it was caused solely by the negligence of the defendant in failing to build and maintain a bank or dike around the tank to catch and save the escaping oil. In its instructions the court told the jury that if the defendant did not use the care exercised in building a dike around the tank, such as a generally careful oil producer would use, he could not recover for so much of the oil as might have been saved by that process. The defendant was not required to anticipate the negligence of the plaintiff, or a breach of the warranty, or to build embankments to prevent loss by reason of its breach of the implied warranty. A witness for defendant testified that a dike around the tank was built but that it was constructed for the purpose of protecting the oil from fires and was not made in preparation for the possible bursting of the tank nor to protect oil escaping by reason of its negligent construction. The failure to build the dike would not lessen the liability of the plaintiff for oil that was actually lost by reason of the breach of the warranty. Under the testimony it cannot be said that it was lost through the fault of the defendant.

The judgment is reversed and the cause remanded for a new trial.