THE PALMER OIL AND GAS COMPANY v. JAMES Q. BLODGETT *et al.*

### No. 11265.

1. CONVEYANCE — *Deed Construed* — *Life-estate.* A deed of a quarter-section of land which in the granting clause purports to convey to the grantee a fee-simple title, but which in the *habendum* clause reads as follows: "To have and to hold the same during her natural life, and at her death to be divided as follows: Sixty-five acres north of the railroad right of way to Mary K. Blodgett, and·the balance to go to James Q. Blodgett," is a conveyance of a life-estate to one, with remainders in fee to the others: and the clause attempting to create the remainders is not void for repugnancy to the granting clause.

2. ESTOPPEL — *Pleading.* Facts constituting an estoppel *in pais* must be specially pleaded.

3. CONTRACT — *Entirety* — *Parties.* An action or defense based upon the theory of the entirety of a contract is not open to a stranger to it in a proceeding collateral to it and in assertion of its invalidity as to him.

Error from Allen district court; L. STILLWELL, judge. Opinion filed July 8, 1899. Modified.

*Oscar Foust & Son, C. E. Benton,* and *A. H. Campbell,* for plaintiff in error.

*J. F. Thompson,* for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action brought by James Q. Blodgett and Mary K. Hackney against the Palmer Oil and Gas Company to restrain the company from boring for oil and gas upon a certain quarter-section of land of which it claimed to be the lessee under a lease executed to it by one Mary Blodgett, and in which land the plaintiffs claimed an estate of remain-

der succeeding a life-estate held by the lessor. The claimed estates were created by the following deed :

"This indenture, made this 26th day of May, 1886, between N. S. Sunderland and Rachel Sunderland, his wife, of Pawnee county, in the state of Kansas, of the first part, and Mary Blodgett, of Allen county, in the state of Kansas, of the second part, Witnesseth : That the said parties of the first part, in consideration of the sum of one thousand dollars, the receipt of which is hereby acknowledged, do by these presents grant, bargain, sell and convey unto said party of the second part, her heirs and assigns, all the following-described real estate situated in the county of Allen and state of Kansas, to wit : The southeast quarter of section 33, township 24 south, of range 19 east, less the right of way of the St. Louis, Fort Scott & Wichita Railroad Company, to have and to hold the same, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, during her natural life, and at her death to be divided as follows, to wit : Sixty-five acres, including the right of way of the said St. Louis, Fort Scott & Wichita Railroad Company, off of the north side of said quarter-section, to go to Mary K. Blodgett, a daughter of the said Mary Blodgett, and the balance of the quarter-section to go to James Q. Blodgett, a son of the said Mary Blodgett."

The Mary K. Blodgett named in the above-quoted deed married subsequently to its execution, and became Mary K. Hackney. Mary Blodgett, the grantee in the deed, executed to the Troy Oil Company a lease of the entire tract in question, by the terms of which the right to bore for oil and gas and to use and pipe away the product found were conferred in consideration of certain rentals and the performance of certain conditions. This lease was subsequently assigned to the Forest Oil Company, which in turn assigned it to the Palmer Oil and Gas Company, the defendant be-

low, the plaintiff in error here. Operations under the lease being to the injury of the estate in remainder claimed by the plaintiffs, injunction was brought in the court below. The defendant, as a principal defense, denied the existence in the plaintiffs of any interest in the land. The court found all the issues in favor of the plaintiff Mary K. Hackney, but found against her co-plaintiff James Q. Blodgett. It, however, rendered judgment in favor of Mary K. Hackney, enjoining the defendant, as to her, from operating under its lease upon any part of the land, but refused the like relief to James Q. Blodgett.

The first question is one of construction of the deed. Do the plaintiffs below, the defendants in error here, have an estate of remainder in the land? Counsel for plaintiff in error claim that they do not. They divide the deed, as is proper to be done, into premises or granting clause, *habendum*, etc., and contend that under the granting clause the fee-simple title fully passed to Mary Blodgett, and that the *habendum* clause following, under which the estate would appear to be limited to her life, was ineffectual to restrain the full .operation of the grant or to create a remainder in the other persons, because in cases of repugnancy between the premises and the *habendum* in a deed the former controls and neutralizes the latter. In support of this rule, Blackstone's Commentaries, book 2, p. 298, and *Tyler v. Moore*, 42 Pa. St. 386, and other Pennsylvania decisions, are cited. Modern theories, however, put deeds of real estate, for purposes of construction of their terms, in the list with all other kind of written contracts, and they endeavor to ascertain the intent of the parties executing them more from the language of the whole instrument than from the relative positions of the different parts or clauses. Any person

reading the conveyance above quoted will admit that the grantor's intention was to convey a life-estate to Mary Blodgett, with fee in remainder to James Q. and Mary K. Blodgett.   That, as a proposition of fact, is self-evident, and effect must be given to this intention if possible.   The later authorities not only make it possible but require it.   In *Harriot v. Harriot*, 49 N.Y. Supp. 447, the court states and decides a case as follows :

"In November, 1855, the owner of a certain real property executed a deed of gift thereof to his son, which conveyed the same, together with all the estate, right, title and interest of the grantor, 'to have and hold,   .   .   .   unto the said party of the second part, from and after May 1, 1861, for and during the residue of his natural life, with the remainder over .   .   .   unto his lawful issue,   .   .   .   as tenants in common,   .   .   .   and in case any child should die,   .   .   .   leaving lawful children, then such children shall take,' etc.   The grantor also, in terms, reserved the intermediate estate prior to May 1, 1861. The grantee, who never had issue, died intestate in 1897, leaving the plaintiff, his widow.   *Held*, that the deed conveyed to the grantee only a life-estate."

In the opinion in this case it was remarked :

"Usually the granting clause or the premises of the deed would indicate what was intended to be conveyed.   By our statute it is provided (1 Rev. Stat., p. 748, § 1), among other things, that any grant of real estate shall pass all the estate or interest of the grantor, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied from the terms of such grant.   If there is a plain and open repugnancy between the granting clause and the *habendum*, and nothing else to be considered, the larger estate granted may not be cut down or reduced by the *habendum;* but in the construction of deeds, as of other instruments, the real question is, What was the intention of the grantor, to be gathered from all

the terms of the instrument? Here it seems to me that it is plain that this grantor merely intended that his son should have a life-estate in the property.''

In *Barnett v. Barnett,* 104 Cal. 298, 37 Pac. 1049, it was held :

''In construing a deed the intention of the grantor is to be ascertained from the entire instrument, including the *habendum* as well as the granting clause ; and if it appears from such construction that the grantor intended by the *habendum* clause to restrict or limit or enlarge the estate named in the granting clause the *habendum* will prevail over the granting clause. . . . The intention of the parties to the grant is to be gathered from the instrument itself, and determined by a proper construction of the language used therein, but for the purpose of ascertaining this intention the entire instrument, the *habendum* as well as the premises, are to be considered, and if it appear from such consideration that the grantor intended by the *habendum* clause to restrict or limit or enlarge the estate named in the granting clause, the *habendum* will prevail over the granting clause. (*Faivre v. Daley*, 93 Cal. 670, 29 Pac. 256 ; *Pelissier v. Corker*, 103 id. 516, 37 Pac. 465.) It is in such case to be considered as an addendum or proviso to the conveyancing clause, which by a well-settled rule of construction must control the conveyancing clause or premises, even to the extent of destroying the effect of the same.''

In *Bodine's Administrators v. Arthur,* 91 Ky. 53, 14 S. W. 904, it was ruled :

'' When there is a repugnancy between the granting clause and the *habendum* of a deed, and it cannot be determined from the whole instrument and attendant circumstances with reasonable certainty that the grantor intended that the *habendum* should control, the granting clause must control ; but where it appears from the whole conveyance and attendant circumstances that the grantor intended the *habendum* to enlarge, restrict or repugn the granting clause the

*habendum* must control, for the reason that it is the last expression of the grantor's wish as to the conveyance.''

See generally, upon the construction of deeds and conflicts between the granting and *habendum* clauses, Devlin on Deeds, vol. 1, § 213, *et seq.*, and vol. 2, § 836.

It is claimed that the evidence shows Mary K. Hackney, the plaintiff below, to be estopped from objecting to an assertion of rights by the defendant under its lease because of conduct upon her part amounting to waiver and acquiescence. However, this conduct, according to the plaintiff in error, amounted to nothing more than mere silence and non-assertion of rights, with the knowledge that the company had obtained the lease, was paying rent for it, and was expending money in the development of the gas fields of Allen county. It is not claimed that she remained silent while the company was expending money under the lease in developing oil or gas on the land in question. Whether mere silence under these circumstances is sufficient to raise an estoppel we need not undertake to determine. There was no plea of estoppel in the defendant's answer. Whether the court below found upon this question in Mary K. Hackney's favor because the evidence against her was insufficient to create an estoppel, or because there was no plea of estoppel under which evidence could be introduced, we do not know. In disposing of the question the latter is sufficient for our purpose. All acts, representations and conduct relied upon as an estoppel must be specially pleaded. (*Insurance Co. v. Johnson*, 47 Kan. 1, 27 Pac. 100 ; *Insurance Co. v. Thorp*, 48 id. 239, 28 Pac. 991.)

Upon what state of facts or theory of law the court found against the plaintiff James Q. Blodgett, and yet

granted to Mary K. Hackney an order of relief fully pro-
tective of his interests, we are at a loss to know.   If the
interests of these two persons were those of tenants in
common, if each owned in remainder an undivided
moiety of the land, a judgment in favor of one would
appear to operate in favor of the other, because of the
inseparability of their interests ; but the conveyance
under which they claim is a conveyance of divided,
not undivided, interests.   The conveyance to Mary K.
Hackney was of the north sixty-five acres.   With that
only is she concerned.   The conveyance to James Q.
Blodgett was of the remaining ninety-five acres.   With
that only is he concerned.   If he has performed an act
of estoppel as to his portion he must abide the conse-
quence.   He can claim no immunity by subrogation,
as it were, to the better equities of Mary K. Hackney.
For purposes of separability of interests between re-
mainder-holders the conveyance above quoted is as
if there were two, one to Mary K. and another to
James Q. Blodgett.   Counsel for James Q. Blodgett,
however, contends that the judgment of the court
below is to be upheld upon the doctrine of the en-
tirety of contracts.   He says that the lease in ques-
tion was a single contract ; that it must wholly stand
or wholly fall ; that it cannot be held bad as to Mary
K. Hackney without likewise being held bad as to
James Q. Blodgett, because to do otherwise would
give it the character of a divisible, instead of an en-
tire, instrument.   A sufficient reply to this is that the
doctrine of entirety of contracts applies only as be-
tween parties to them, and has no application to con-
troversies between a party on one side and a stranger
on the other.   It is not the present estate of Mary
Blodgett, the owner of the life-estate, but his own
future estate in remainder in a portion of the land,

which James Q. Blodgett is interested in protecting. He is asserting no rights under the contract of lease. He has, therefore, no concern to maintain the indivisibility or entirety of its obligations. The question he seeks to raise could only arise in a controversy between Mary Blodgett, the lessor, and the Palmer Oil and Gas Company, the lessee. Whether the law will apportion the rent money and other considerations in consequence of the failure of the lease as to Mary K. Hackney's sixty-five acres is not before us for determination. James Q. Blodgett cannot defend this action upon the assumption that such apportionment cannot be made.

The judgment of the court below will be modified to conform to the views expressed in this opinion, and the costs of this court will be equally divided between the parties.