No. 22,913.

J. M. LANGSTON, Jr., *Appellee*, v. F. C. HOYT, *Appellant*.

SYLLABUS BY THE COURT.

1. REAL-ESTATE AGENT—*Action for Commissions—Defense of Fraud on the Part of Agent—Refusal of Court to Make Certain Findings of Fact—Error*. In an action by a broker to recover a commission for procuring a sale of an oil lease the defense was that the sale was procured through the misrepresentation and fraud of the broker, and as there was evidence tending to sustain the defense and, further, that because of the fraud a sale made was rescinded, it was the duty of the trial court upon request of the owner to make a finding as to whether or not the broker was guilty of fraud in the transaction, and whether or not the sale was rescinded and the services of the broker became worthless because of the fraud of the broker.

2. SAME—*Misrepresentation and Fraud by Agent Forfeits His Commissions*. Misrepresentation and fraud on the part of a broker in procuring a sale of property operate as a forfeiture of his commission and make him liable for resulting damages.

3. SAME — *Condonation and Confirmation of Fraud Must Be Specially Pleaded—Inadmissible Evidence*. In order for the broker to avail himself of the claim that the owner had condoned and confirmed the fraud of the broker by making a subsequent agreement with the purchaser, it was incumbent on the broker to plead the agreement and, not being pleaded, evidence of the agreement was not admissible.

4. SAME. Where a broker relies on a subsequent agreement or conduct of the owner as an estoppel against the assertion of fraud, it must be specially pleaded.

Appeal from Sedgwick district court, division No. 1; RICHARD E. BIRD, judge. Opinion filed January 8, 1921. Reversed.

*Chester I. Long, Austin M. Cowan, Claude I. Dupuy,* and *Forest D. Siefkin,* all of Wichita, for the appellant.

*T. A. Noftzger, George W. Cox, W. R. Glass,* all of Wichita, and *A. R. Carpenter,* of Cherokee, Okla., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In an action to recover a commission on the sale of an oil and gas lease, the plaintiff recovered a judgment and defendant is here complaining of rulings made in the course of the trial.

The plaintiff, who was a broker, was employed by the defendant to procure a purchaser for an oil and gas lease on certain land in Oklahoma. It was agreed that for this service he was to be paid the amount received for the property in excess of $11,000. Shortly after his employment he interested the Golden Rod Oil & Gas Company in the land and induced a representative of that company to visit and inspect the property and while there negotiated a sale of the property for $15,000. In pursuance of the negotiations the defendant made a sale of the property to the purchaser for the agreed price, and payment was made in cash and notes. At that time the defendant paid the plaintiff $1,000 on the commission and declined to pay the balance of $3,000, and for this amount the present action was brought.

The defendant admits the employment, the making of the sale for $15,000, and the payment of $1,000 towards the commission of the plaintiff. In his answer he pleaded that the purchaser of the Golden Rod Oil & Gas Company subsequently brought an action against him to set aside the contract and recover back the amount which had been paid for the property because of the false and fraudulent representations made by plaintiff while acting as his agent. He further alleged that when sued by the oil company he notified the plaintiff of the action and asked him to defend against the charges of misrepresentations, but that plaintiff refused to do so. The result of that action was a judgment rescinding the contract and re-

quiring defendant to pay back the money received under it, together with the costs of the action. He also claimed that he paid the $1,000 upon the commission to plaintiff before he learned of the fraud committed by the plaintiff in the negotiations. The fraud consisted, it is averred, in the representation by plaintiff to the purchaser that of the two oil wells on the leased land, one was producing twelve barrels of oil per day, and the other fifteen, and further, that there were no dry holes on the land. Defendant alleged that the well represented to be producing fifteen barrels of oil per day was not producing any, and was in fact a dry hole, and the one represented to be producing twelve barrels per day was not producing more than one barrel per day. Defendant therefore insisted that by reason of the plaintiff's fraud in the transaction he was not entitled to any commission, and he therefore asked for a judgment for the $1,000 he had paid to plaintiff as commission, and also for damages sustained by reason of the fraud and the rescission of the contract. To meet the claim of the defendant that plaintiff had fraudulently misrepresented the property to the purchaser, plaintiff offered testimony to the effect that the representations as to the production of the oil wells were those made to him by the defendant, and that when he spoke to the defendant in regard to his representations to the purchaser prior to the sale, the defendant replied, "Those are the facts." He testified that defendant gave him a plat to be used in the negotiations on which were notations that one well produced fifteen barrels and the other twelve barrels per day, and further that he only repeated to the purchaser the information given him by the defendant. This was denied by the defendant who testified that his only statement in regard to it was as to the flush production of the wells when they were drilled and, further, that he had not represented to plaintiff or anyone else what the production was after that time. Evidence was offered by the plaintiff in rebuttal over the objection of the defendant that when the purchaser discovered that he had been defrauded in the transaction and the wells were not as represented, and insisted on the return of his money, an effort was made to compromise and settle the controversy, and the defendant then proposed to the purchaser that he would drill another well on the land at his own expense and would then pump the three

wells for seven days, and if the wells did not produce an average of twenty barrels of oil per day he would refund the purchase price. It was further proposed that if the new well did not produce ten barrels per day, he would likewise refund the money received on the sale. It appears that the purchaser assented to the proposition, but it was never carried out by the defendant. Defendant testified that the arrangement was not carried out because of a storm and weather conditions which made it impossible to drill the well within the time limited for that purpose. There is testimony tending to show that the defendant conferred with the plaintiff regarding the threatened rescission of the contract, and also as to the proposal to drill another well, and that the plaintiff in fact negotiated and approved the subsequent contract and agreed to pay part of the expense of drilling the well. Special findings of fact were requested by the defendant and returned by the court in an informal statement made at the conclusion of the trial, which the court said should be treated as findings. In substance the court found that misrepresentations had been made, and that while the evidence was not conclusive as to whether defendant verified the representations of plaintiff, and it was not shown whether the defendant referred to flush or reduced production of the wells, neither could be regarded as material. It was stated that whether plaintiff participated in the fraud was not the question; that the arrangement made between the defendant and the purchaser, after the fraud was discovered, rendered it immaterial whether it was the fraud of plaintiff or of defendant, or the fraud of both of them. It was found that that arrangement was a novating contract by which the defendant in effect accepted the services of plaintiff, fraud and all. The additional contract, it was found, set everything at rest and entitled the plaintiff to his commission, and judgment was accordingly given for $3,514.

The defendant insists that the court erred in refusing to find whether or not the plaintiff participated in the acknowledged fraud and that the court erred in resting its decision of the issues upon a subsequent contract that was not pleaded.

We think the defendant had good reason to complain of the disposition that was made of the case. He was entitled to a finding and a decision as to whether the plaintiff was guilty of

fraud in procuring a sale of the lease. In his petition plaintiff alleged that he procured a sale of the property and had earned his commission. In his answer the defendant pleaded that plaintiff was not entitled to the commission because the sale was procured through his fraud and that the payment of $1,000 on the commission was made by defendant before he learned of the misrepresentations and fraud of the plaintiff. The record is replete with proof that fraudulent representations were made to the purchaser, and whether the fraud was committed by the plaintiff or by the defendant or the plaintiff participated in the fraud of the defendant was a vital issue in the case. Of course if plaintiff had no knowledge of the value of the property or the oil production on it and only innocently repeated the representations made to him by the defendant, he was not guilty of fraud towards the latter. (*Hussey v. Michael*, 91 Kan. 542, 139 Pac. 596.) However, there was evidence tending to show conscious misrepresentation by the plaintiff as to the ownership of the property, and that the reason no oil was being produced from the well which was dry was that the pump was broken, when in fact the well was dry. Besides, he admitted that he was familiar with the value of this lease at the time of the sale and the negotiations leading up to it and ever since that time. This implied that he knew of the production of the wells, which is the principal element in fixing the value of the lease. If the misrepresentations were made by the plaintiff and the defendant had no part in them the plaintiff was guilty of fraud, and if as a result of that fraud the contract of sale had to be rescinded and the services of plaintiff as broker were rendered worthless he is not entitled to compensation. On the other hand, if the defendant confirmed the representations made by the plaintiff, other considerations would enter into the case. However, the court found that the evidence as to confirmation was not conclusive or decisive. Fraud on the part of the broker not only avoids the contract but it operates as a forfeiture of the commission. (*Jeffries v. Robbins,* 66 Kan. 427, 71 Pac. 852; *Deter v. Jackson,* 76 Kan. 568, 92 Pac. 546; *Krhut v. Phares,* 80 Kan. 515, 103 Pac. 117; *Avery v. Baird,* 106 Kan. 507, 188 Pac. 254.)

It has been held that if a broker is guilty of misconduct, gross neglect or fraud in the transaction to the injury of his

principal, he not only forfeits his commission but makes himself liable for resulting damages. (*Ratliffe v. Cease,* 100 Kan. 445, 164 Pac. 1091; *Fisher v. Dynes et al.,* 62 Ind. 348; *Porter and Another v. Silvers,* 35 Ind. 295; *Collins et al. v. McClurg,* 1 Colo. App. 348.) The principle of agency applies in such cases and it is said by Story that—

"The agent is entitled to his commission only upon a due and faithful performance of all the duties of his agency in regard to his principal." (Story on Agency, 9th ed., § 331.)

If the fraud is that of the broker his contract with the principal is avoided whether or not it resulted to the injury of the principal, and this rests on questions of public policy rather than of injury to the principal. (*Hafner v. Herron,* 165 Ill. 242.) There was evidence upon which the court could have made a finding as to whether the fraud was committed by the plaintiff or by the defendant or by both of them, and as the issues were formed the defendant was entitled to have the finding made.

But it is said that the novating contract made between defendant and the purchaser rendered a finding unnecessary. That contract, incidentally brought into the case, was not pleaded. It was introduced over the objection of the defendant and when the court stated that it was about to rest its decision upon that agreement, the defendant objected and called the attention of the court to the fact that it was not the contract pleaded and was at variance with it. At times the court referred to the arrangement made between the defendant and the purchaser as a novating contract, and again referring to it said that it was not a contract but should be treated as an estoppel and as evidence of the original contract. If it was a contract material to the issue it should have been pleaded, and if an estoppel, it likewise should have been specially pleaded and a definite issue presented so that the defendant could have made preparation to meet it. (*Insurance Co. v. Johnson,* 47 Kan. 1, 27 Pac. 100; *Palmer v. Blodgett,* 60 Kan. 712, 57 Pac. 947.) Under the pleadings evidence of the agreement was inadmissible and should have been excluded on defendant's objection. It may be noted that no motion was made by plaintiff to amend the pleadings so as to conform with the proof of the subsequent contract upon which the judgment was based,

and even if it had been made, its allowance at the end of the trial to conform to proof objected to and not within the issues pleaded would not have been in furtherance of justice. It may further be noted that the plaintiff appears to have made himself a party to the agreement in that he negotiated it and agreed to pay a share of the expense of drilling the new well on the lease. Both plaintiff and defendant were interested in overcoming the objections raised by the purchaser because of the fraud perpetrated upon him, and both appear to have been attempting to accomplish a sale and transfer of the lease made as defendant contends through the fraud of the plaintiff.

It cannot be determined on this appeal whether the sale was avoided by the fraud of the plaintiff or that of the defendant as that question was not determined by the trial court. It is manifest that the case was not properly tried, and therefore the judgment is reversed, and the case remanded for a new trial.