No. 24,421.

A. E. Jones and F. C. Firestone, *Appellants,* v. J. W. Hall, *Appellee.*

SYLLABUS BY THE COURT.

1. REAL-ESTATE AGENTS—*Action for Commissions—Fraud Practiced by Agents on Landowner—Commissions Forfeited.* The plaintiffs, as real-estate dealers, were employed at the usual rate of commission to sell or barter the defendant's farm at a valuation of $10,000. Defendant gave his assent to an even exchange for certain city property. Plaintiffs obtained the assent of the owner of the city property to exchange it for the farm and give $2,000 to boot. Without disclosing this last fact to defendant, plaintiffs got him to sign a new contract that they could keep as their commission whatever they might obtain above an even exchange of properties. On discovery of this concealment of the facts, defendant rescinded the contract of exchange and entered into and effected a new and different contract for the exchange of the properties, and denied all liability to plaintiffs. *Held,* that plaintiffs' failure in their duty to make fair and full disclosure to their employer, the defendant, avoided their contract and operated to forfeit their right to any commission, and *held,* also, that under the facts in evidence defendant was not estopped to deny his liability on the second contract.

2. SAME—*Instructions.* Instructions complained of examined, and no error discerned therein.

Jones v. Hall.

Appeal from Sedgwick district court, division No. 1; Thomas E. Elcock, judge. Opinion filed April 7, 1923. Affirmed.

*T. A. Noftzger, George W. Cox,* both of Wichita, and *H. E. Walters,* of Kingman, for the appellants.

*Z. Wetmore, Fred Hinkle,* and *George M. Ashford,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action by plaintiffs for a real-estate dealer's commission on the sale and barter of defendant's farm.

Defendant listed his farm with plaintiffs on an agreement that if they effected a sale or trade of it at a valuation of $10,000 he would pay them the usual commission of 5 and 2½ per cent, which would be $275.

Plaintiffs discovered a Miss Hilton who had a property in Wichita which she would exchange for the farm. Defendant was willing to trade his farm for the Hilton property. Plaintiffs got the woman to agree to the exchange and to give $2,000 in bonds and cash to boot, and she signed a contract to that effect. When plaintiffs had secured this contract, they called on defendant and told him that they believed they could get their commission over and above the valuation defendant had placed on his farm, thus relieving him from its payment. Thereby induced, defendant entered into a contract with plaintiffs that they could keep as their commission whatever amount they could obtain in addition to the Hilton property in exchange for defendant's farm. Some hours afterward they produced the contract they already had with Miss Hilton, and defendant signed it. In terms this contract specified the properties which were to be exchanged, and the boot—$1,000 in cash and $1,000 in liberty bonds, was also specified therein.

Plaintiffs' first contract of employment on a commission basis of 5 and 2½ per cent was made on June 14, 1920. The contract of exchange which they effected with Miss Hilton was made in the forenoon of June 16; the contract providing for a substitute commission of all that plaintiffs could get above an even exchange of the properties was made with defendant in the early evening of June 16; and the plaintiffs induced the defendant to sign the Hilton contract at a later hour the same night.

Some days later defendant discovered the fraud and rescinded the contract, and thereupon defendant and Miss Hilton made a new

contract whereby Miss Hilton conveyed her city property and $1,000 to defendant in exchange for defendant's farm.

Plaintiffs sued defendant for the $2,000 under their second contract for a commission. Defendant's answer set up the alleged fraud of plaintiffs.

Verdict, special findings, and judgment for defendant. Plaintiffs appeal.

Error is assigned in the instructions and in overruling the motion for a new trial. Under this the plaintiffs open their argument, contending that "the appellants owed no duty in this transaction to Ella Leota Hilton." This contention may be conceded; defendant does not contest it; and, indeed, the court clearly instructed the jury to that effect.

The next point urged is that "the appellants made no misrepresentations to the appellee to obtain the [second] commission contract." There may have been no actual, verbal misrepresentations made to the defendant. Plaintiffs' fraud lay in what they concealed from defendant, not in what they told him. At the very time they approached him to alter their employment from a commission basis of 5 and 2½ per cent, which would yield them a compensation of $275, they already had a contract signed by Miss Hilton whereby she bound herself to convey her city property and $2,000 in exchange for defendant's farm. The plaintiffs could obtain no advantage from that contract without first making fair and full disclosure to defendant of what they had done. This concealment of facts which it was their duty to disclose avoided the second contract and operated as a forfeiture of any commission. This disciplinary rule of law is essential to secure the fidelity of an agent to his principal, and has frequently been applied. (*Avery v. Baird,* 106 Kan. 507, and citations, 188 Pac. 254; *Langston v. Hoyt,* 108 Kan. 245, and citations, 194 Pac. 654.)

The next contention is that the appellee was estopped from claiming that he was not bound by the second commission contract. The court discerns no foundation for this point. Defendant could not be estopped by his conduct since that conduct was induced by the fraudulent concealment of a highly important fact. When defendant discovered the infidelity of his agents, he was at liberty to repudiate their action. When a man discovers that he has a servant who is altogether too sharp for him, it is but common prudence to get rid of that servant; and he is at liberty, with the assent of the

other party with whom his unfaithful servant has contracted, to abrogate or rescind the contract made in his behalf, and to enter new negotiations·with the other party on his own initiative.

Touching the errors assigned on the instructions, it seems to be the view of plaintiffs that if the defendant knew and understood, when he signed the contract for the exchange of properties, that his agents had obtained from Miss Hilton $2,000 in cash and bonds in addition to the Hilton property, that he could not defeat plaintiffs' claim to the $2,000. That overlooks entirely the deceit of plaintiffs in getting defendant to sign the second contract for commission earlier on the same day without full and fair disclosure that they had then consummated with Miss Hilton a far better bargain for defendant than he had hoped to get. All the consideration, advantages and profits of that bargain (less plaintiffs' original commission of $275) belonged absolutely to defendant; and although defendant did not know of the unexpectedly fine bargain which had already been negotiated in his behalf, he did not lose his right thereto because of the fraudulently induced second contract of commission made by him with plaintiffs. If, when the second contract for commission was made there had been no deal·with Miss Hilton, either consummated or about to be consummated, the second contract might have been valid; under the circumstances it was void and vicious. The instructions complained of were in general accord with this view.

The record contains no error, and the judgment is affirmed.