No. 26,106.

MARY V. READECKER, *Appellee*, v. (S. I. SMITH, CHARLES U. FLOTO), D. C. LANE, *Appellant*.

SYLLABUS BY THE COURT.

BROKERS—*Action for Commission—Unfaithful Service—Special Findings—Evidence*. In an action to quiet title to property, wherein one of the defendants filed a cross action for a real estate dealer's commission on the sale of the property, the record examined, and *held*, that the jury's special findings on the issue involved in the cross action were well supported by the evidence; and *held*, also, that defendant's unfaithful service to his principal barred his right to a commission.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed November 6, 1926. Affirmed.

*James E. Smith* and *Frank H. McFarland,* both of Topeka, for appellant D. C. Lane.

*Arthur J. Stanley* and *J. R. Stanley,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff brought this action against defendants to quiet her title to six and a fraction acres of land in Rosedale.

Defendants Smith and Floto filed separate answers pleading various defenses, but they were worsted in the trial court and have not appealed.

Defendant Lane filed an answer and cross petition in which he alleged that plaintiff had employed him as her agent to sell the property at an agreed price and for an agreed commission of $500, and that he had effected a sale of the property to defendant Smith, and that his commission was due and unpaid, and asked judgment accordingly.

Plaintiff replied to Lane's answer and cross petition with a pleading in the nature of demurrer for misjoinder, and admitted that she had employed Lane to sell the property, but alleged that Lane did not deal with her in good faith, that the ostensible sale effected by

Brokers, 9 C. J. p. 566 n. 63.

Lane to Smith was a sham, and that the contract of sale which she authorized and to which she intended to attach her signature specified a price of $15,000, on which $200 was to be paid at once, $2,300 on delivery of the deed, with the following express stipulation:

> "Buyer to give back a mortgage securing note for
> $12,500.00, payable on or before five years from date of
> delivery of deed, with interest at six per cent per annum,
> payable (semi)-annually."

Plaintiff signed a contract in triplicate to this effect. The clause quoted above was in typewriting on a narrow slip of paper inserted by pasting in a printed form of contract for the sale of real estate. Such were the recitals of the triplicate copy left in the possession of the plaintiff. The other two triplicates, one of which was placed in escrow, contained attached slips of paper with typewritten recitals identical with those inserted in plaintiff's copy, but with certain additions thereto:

> "Buyer to give back a mortgage securing note for
> $12,500.00 payable on or before five years from date of
> delivery of deed, with interest at six per cent per annum,
> payable (semi)-annually.
>
> "It is a provision of this contract that if the buyer so elects he may pay $3,300 cash on delivery of deed; and in such case seller agrees to take back a mortgage securing note for $11,500, payable as above and secured by mortgage on all of the above-described property, with the exception of the following tract: Beginning at the intersection of the south line of the San Francisco Railroad Company's right of way and the west line of Rosedale avenue in Rosedale, Kansas, thence southwesterly along said right of way 500 feet, thence southeasterly at right angles to said right of way 90 feet, thence northeasterly parallel to said right of way to the west line of Rosedale avenue, thence north to the point of beginning."

Plaintiff and her husband testified that when the triplicates were signed the pasted slip of typewriting contained about three lines only. It was shown that all three copies of the contract were in defendant Lane's exclusive control for twenty minutes while he took them away to have them signed by Smith.

It was also shown in evidence that Smith was not a *bona fide* purchaser of the property; and that Lane induced Smith to quitclaim the property to Floto and caused Floto's deed to be recorded to becloud plaintiff's title and thus coerce her into consenting to a disposition of the property whereby the most valuable part of it—an acre strip off one side of it lying adjacent to a railway—should be conveyed to a wholesale hay company for industrial purposes for

$4,000, and to constrain plaintiff to accept a mortgage on the remaining and much less valuable part as security for the balance of the purchase price.

Lane's testimony was to the effect that the execution of the contract in triplicate was straightforward and regular, that he had not changed the text of the typewritten rider. On cross-examination, however, he did admit that both Smith and Floto were straw men who were acting for him. He admitted he made the suggestion to Smith that he convey the property to Floto, and that he had tried to get the Smith contract recorded:

"Q. Not succeeding in recording it, you then hatched a scheme of making a deed to a stranger. A. That was the fact in the case.

"Q. Now just answer the question. You hatched a scheme for Smith's making a deed to an entire stranger to this contract? A. Yes, sir.

"Q. And you said you would cloud Readecker's title until—you would make him perform on that contract? A. Sure. That was to bring the contract through."

Smith, for whose production as purchaser Lane claimed the commission of $500, admitted he was a straw man, and that he never paid plaintiff $200 or any other sum, and that he "did not know who had requested him to execute a quitclaim deed to Charles U. Floto." Floto gave him nothing for the deed, and he did not ask anything. Floto testified he had no interest in the matter, that he acted as a straw man, and did not propose to get anything out of the transaction, and that he always "handled his straw-man work so that there would be no liability on him."

Jury trial; verdict and special findings for plaintiff; judgment accordingly; appeal.

Counsel for appellant contend that there was no evidence to support the controlling special findings of the jury; and they invite this court to examine the physical evidence inherent in the triplicate copies of the contract and which are produced for our inspection. It is argued that these show beyond cavil that all three copies of the two typewritten clauses were made at one writing by the use of carbon sheets; that the punctuation, corrections, and the like, are identical and must have been made at the same time. This may be conceded. But whether the second clause was clipped off plaintiff's copy of the contract before she signed it, whether she clipped off that clause later, whether the other two copies of the contract actually contained the attached typewritten slips with the two clauses thereon at the time plaintiff signed the contract, or

whether these slips now appearing in defendants' exhibits were attached afterwards—these were jury questions. Certain it is that either plaintiff tampered with her copy of these triplicates or somebody working in defendant's interest tampered with the other two. It is not our function to settle that question. The evidence inherent in all the circumstances, as well as in the testimony of the litigants, was quite sufficient to support the jury's finding thereon, and it will have to stand.

It is also contended that there was no evidence to support the jury's finding No. 4, and that it was at variance with an admission in her reply to Lane's answer and cross petition. We must hold otherwise. Moreover, if the fact sought to be elicited by this special question to the jury had been admitted in plaintiff's pleading it would have been superfluous to have submitted that question to the jury.

Exception is taken to the jury's special finding that defendant altered the contract after it was signed. There was no want of evidence, in our judgment, to prove that some sort of legerdemain had been practiced by defendant or on his behalf, sufficient to support that finding.

Fault is found with the lack of precision in the jury's answer to the question whether the contract signed by plaintiff and her husband and defendant Smith contained an attached typewritten rider containing the provisions as claimed by defendant. The answer was: "Contract was signed in part." While defendant filed a motion to set aside this and other findings, it was not objected to as indefinite, and the finding was simply the jury's way of saying that only part of the controversial typewritten matter was attached to the contract at the time it was signed.

Noting briefly other criticisms directed at the special findings, it must be held that any other answer than "No" to question No. 5 would scarcely have been correct. Moreover, the fact sought to be elicited by the question was not very material. Finding No. 6 was abundantly established. Smith did not elect to exercise the privilege of paying $3,500 cash down or any other sum. He was a "straw man"; the sale to him was a sham.

Touching finding No. 8, ere this lawsuit was concluded it was clearly established that Lane never effected a sale of plaintiff's property to Smith, and it was also shown beyond cavil, and indeed by Lane's own testimony, that he did not conduct himself with that requisite fidelity to his principal to entitle him to his commission on

a sale of the property either on the terms originally authorized by plaintiff or on any other terms satisfactory to her effected through his initiative or assistance. (*Avery v. Baird,* 106 Kan. 507, 188 Pac. 254; *Schlesener v. Mott,* 107 Kan. 41, and citations, 190 Pac. 745; *Langston v. Hoyt,* 108 Kan. 245, 249, 250, 194 Pac. 654; *Jones v. Hall,* 113 Kan. 368, 214 Pac. 521.) If Lane had been the procuring cause of a *bona fide* contract of sale from plaintiff to Smith, his commission would have been due and payable whether such sale was finally consummated or not (*Young v. Newbold,* 119 Kan. 394, 239 Pac. 1106), but even in such case Lane would have had no right to aid in coercing plaintiff to comply with her contract. Still less had he any right or excuse to "hatch a scheme" to cloud her title "to bring the contract through." This attitude of defendant was potent evidence that he was working against the interest of his principal, and of course he was not entitled to a commission.

A painstaking examination of this record discloses nothing of sufficient gravity to disturb the judgment.

The judgment is affirmed.