No. 29,215.

CHARLES W. JOHNSON, Receiver of The Rossville State Bank, *Appellant,* v. THE PEOPLES NATIONAL BANK OF KANSAS CITY, *Appellee.*

(286 Pac. 214.)

Opinion filed April 5, 1930.

*Donald Little,* of Kansas City, and *Randal C. Harvey,* of Topeka, for the appellant.

*Fred Robertson, Edward M. Boddington* and *W. E. Stickel,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Charles W. Johnson, as receiver of the Rossville State Bank, which was closed on August 18, 1927, brought an action against the Peoples National Bank of Kansas City to recover the balance of a deposit, $4,879.23, standing to the credit of the insolvent bank at the time of its failure. The existence of the deposit was not controverted by the defendant, but it was charged off against an indebtedness of the Rossville State Bank of $8,000 to the defendant, for which it held the note of I. B. Alter, cashier of the Rossville State Bank, and other collateral. The trial resulted in a judgment for defendant.

The main question tried out was whether the deposit and the transaction incident to it, based as they were upon a note of I. B. Alter, was a bank transaction or a personal one with Alter. The trial court, upon quite a volume of conflicting testimony, decided that the deposit was a bank, and not an individual, transaction, holding that when the Rossville State Bank failed it was indebted to the defendant bank on account of the note of Alter, and that defendant had a right to set off its claim under the Alter note against the apparent credit on its books in favor of the Rossville State Bank. In his appeal plaintiff insists that the main question for determination is whether the evidence supports the finding of the court that the loan of $10,000 made by the defendant bank, September 8, 1923, upon the secured note of Alter, which was renewed from time to time, was a liability of the Rossville State Bank. There was evidence tending to show that Alter was the owner and manager of the Rossville State Bank, that it was what is commonly spoken of as a "one man bank." He was a stockholder, also, in two other neighboring banks in the towns of Silver Lake and Delia. In the year 1923 negotiations between Alter and the defendant bank were begun relating to the opening of an account with the latter several weeks before the transaction in question was completed. At that time Alter said his bank needed money because of certain withdrawals from it, and that he wanted an accommodation for his bank from defendant. After a number of interviews and some correspondence Alter sent a letter, with a note signed by himself for $10,000 secured by collateral, that is, stock of the Rossville State Bank, Silver Lake and Delia banks. The letter, so far as pertinent, reads:

"DEAR MR. SANDELL: As per our conversation, I herewith hand you my 90-day note with bank stock for collateral for $10,000. Please place the proceeds to credit of Rossville State Bank. I am inclosing signature cards for Rossville and Silver Lake banks, and will transfer some funds for credit of Silver Lake in a few days. The county has drawn on us for $15,000, in the past six weeks and so may need to check out some of this deposit for a short time," etc.

In an interview Alter had told the officers of the defendant bank that there had been withdrawals from Rossville State Bank, and they were down somewhat and wanted to know if the National Bank would grant the bank an accommodation. Thus it appears that Alter treated the note not as an individual deposit, but one to be placed to the credit of the bank, and used to meet the demands of the county which had placed funds in the Rossville State Bank. The letter embodied the understanding which the parties had arrived at in opening an account which ran along for a number of years until the Rossville State Bank was closed. The defendant bank accepted the note and securities and entered the amount, less discount, to the credit of the Rossville State Bank and charged the note on its liability ledger to Alter. The court found, upon what appears to be sufficient evidence, that the Rossville State Bank drew upon this account and deposited other moneys and sometimes the account was greatly reduced and sometimes overdrawn. The note was never entirely paid when it became due, and was renewed for smaller amounts from time to time and the interest on it was paid by Alter, by personal checks drawn against the Rossville State Bank. There was testimony, too, that a year or two after the credit was given to the Rossville State Bank, Alter, in conversation with officers of the defendant, referred to the note as a bank obligation and stated that the bank was expecting soon to get money from certain sources, when it would pay the note and keep a better account with the defendant than it had before. In the course of the dealings the note was sometimes spoken of as the Alter note and the transaction as one with Alter, but this may be accounted for in part that Alter's bank was a one-man concern. It appears that the first step in the transaction was an extension of credit to the bank, and was made for its benefit. The proceeds of the loan were largely drawn out by the bank, and one test of liability in such cases is, which party got the benefit of the loan, or in some circumstances whether the bank had ratified the loan as its own. (*Cherry v. City Nat. Bank,* 144 Fed. 587, affirmed by the supreme court of the United States, in *Rankin v. City National Bank,* 208

U. S. 541.) The case of *Bank v. Bank,* 96 Kan. 558, 152 Pac. 769, and the opinion therein denying a rehearing of the case (97 Kan. 8, 154 Pac. 240) has a bearing on the present case. There one bank loaned another bank $3,500. The cashier of the borrowing bank gave a note to the lending bank in his individual capacity upon grounds advantageous to the borrowing bank. The borrowing bank did not sign the obligation. The note, it was shown, was not taken by the lending bank as consideration for the loan, but as collateral security for it. It was held that as the loan was made by the lending bank to the borrowing one, which was known and understood to be the actual borrower, that it was liable to pay the indebtedness although its name did not appear upon the note. It was determined on the theory that the one receiving credit is the one responsible for the debt. Alter, it appears, committed suicide on August 18, 1927, and two days later the plaintiff was appointed receiver of the failed bank. At that time there was an apparent credit in the defendant bank in favor of the failed bank of $4,-879.23, while the defendant bank had a debit charge against the failed bank on the renewal note of $8,000. The defendant bank then set off that debt against the apparent credit of the Rossville State Bank, and also sold the collateral held with the Alter note, the proceeds of which exceeded the amount of the indebtedness to the extent of $879.23. This amount the defendant bank tendered to the plaintiff receiver, who refused to accept it, claiming the defendant had no right to set off the indebtedness on the note against the credit of the failed bank. Upon the testimony this question was essentially one of fact and while some circumstances and bits of evidence are shown which afforded grounds for contention, the court upon the whole testimony found:

"That the loan of $10,000 made on the personal note of I. B. Alter, was made to him for and on behalf of the Rossville State Bank; that the Rossville State Bank received the proceeds arising from such note, and the renewals thereof, and that it was at all times the understanding and intention of the officers of the Peoples National Bank, and said I. B. Alter, that said transaction of I. B. Alter was a transaction in behalf of the Rossville State Bank."

Upon the questions of fact involved it must be held that there was evidence to support the conclusions of the trial court.

There is a further contention that defendant is estopped to claim that the Alter note was a bank liability, by its conduct in making reports to the bank commissioner, which it is argued were

inconsistent with such a liability. No mention of an estoppel was made in the petition, but in the reply of plaintiff it was alleged that on May 17, 1927, the defendant bank, in answer to questions submitted by the bank commissioner, reported that it did not have under discount any bills receivable of the bank named (none was named) or any on which its official indorsement appeared or for which it was in any other way liable. To a question, were there any loans outstanding by your bank to the bank named (none was named), or any other party for which the bank was in any way liable, the answer was, none. Another question was, had your bank at said date effected any loans for account of the bank named (and none was named), and the answer was, none; and to the question, had your bank purchased any bills receivable from the bank named (none named) indorsed without recourse, but guaranteed by the directors or other officers of the bank on which the bank is not liable, answered, none. This report was signed by A. L. Wilson, assistant cashier. Although other reports and acts are discussed, this is the only report or basis pleaded as a ground of estoppel. To be available as estoppel, it is settled that acts, representations and conduct relied on as an estoppel must be specially pleaded. (*Insurance Co. v. Johnson*, 47 Kan. 1, 27 Pac. 100; *Palmer v. Blodgett*, 60 Kan. 712, 57 Pac. 947; *Langston v. Hoyt*, 108 Kan. 245, 194 Pac. 654.) The making of reports to the bank commissioners on questions as to resources and liabilities of a bank is an important requirement, and failure to truthfully make them is a dereliction which is penalized by the law. The question whether acts or omissions constitute an estoppel in litigation between parties depends upon a number of considerations, one of which is that the party invoking the estoppel must have relied on and have suffered injury by the acts of which he complains. No question is raised as to the financial soundness of the defendant bank which made the report, nor is it claimed that any of its own liabilities were not reported. It might and should have revealed the obligation of the Rossville State Bank to defendant bank, but the record does not show that anyone was misled or prejudiced by the character of the report. No evidence is seen that the bank commissioner relied on the information in the report or that he or anyone else was injured by the omission in the report of the Rossville State Bank obligation. That is essential to the application of the rule

of estoppel even where other elements of estoppel exist. In *Dent v. Smith*, 76 Kan. 381, 92 Pac. 307, it was decided:

"Before the acts of one person can be successfully invoked as an estoppel by another, such other must have relied upon and been prejudiced by the acts of which he complains."

See, also, *Brooks v. Weik*, 114 Kan. 402, 219 Pac. 528; *Jacquart v. Jennings*, 118 Kan. 224, 235 Pac. 101; *Midwest Lumber Co. v. Brinkmeyer*, 125 Kan. 299, 264 Pac. 17; *Robertson v. Andrus*, 125 Kan. 730, 266 Pac. 53. It has been said:

"In order to create an estoppel *in pais* the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character or have been induced to alter his position for the worse in some material respect. As otherwise expressed, where no available right is parted with and no injury suffered there can be no estoppel *in pais*. And *a fortiori*, an act clearly beneficial to the person setting up the estoppel cannot be relied on. In the absence of injury, it is of course immaterial that the other elements of estoppel are present." (21 C. J. 1135.)

A further contention is made that the claim of defendant became barred in three years after the loan was made in 1923, under R. S. 60-306 (2d clause). The account, as we have seen, was opened in 1923, but the note was only a part of that account. It was a mutual running account and continued until the closing of the bank, and there is no room or ground for the application of the statute of limitations.

Some objections are raised to rulings in the admission of testimony, which we have examined, but we find nothing substantial in them. The judgment is affirmed.

HARVEY, J., not sitting.