No. 30,886.

W. F. CHALLIS, *Appellant,* v. ED HARTLOFF; J. W. MACHIN, doing business as the Wamego Seed and Elevator Company; J. K. MULLEN, doing business as the Hays City Flour Mill; and THE COLORADO MILLING AND ELEVATOR COMPANY, *Appellees.*

(18 P. 2d 199.)

Opinion filed January 28, 1933.

*William E. Smith,* of Wamego, for the appellant.

*B. C. Pickering,* of Wamego, for appellee Ed Hartloff, *E. C. Brookens, E. S. Francis* and *H. L. Hart,* all of Westmoreland, for appellee J. W. Machin.

The opinion of the court was delivered by

HUTCHISON, J.: This case was here before and is reported in 133 Kan., at page 221, 299 Pac. 586, but then only concerning another defendant, a flour-mill company which was eliminated from the case because of the running of the statute of limitations before it was made a party defendant by amendment. The appeal at this time is by the plaintiff from the order of the trial court overruling his demurrers to separate answers of the two remaining defendants to the plaintiff's petition. The demurrers to the answers, of course, search the record and go back to the question of the sufficiency of the petition.

Plaintiff seeks in his petition to recover damages from the defendants, Machin and Hartloff, a broker and a retail merchant, respectively. The petition in substance alleges that Machin, the broker, sold flour to the defendant retail merchant, who in turn sold a sack of it to plaintiff on July 21, 1926; that there was an implied warranty that the flour was free from harmful ingredients and was fit for human food; that when so sold by the defendants it contained a poisonous substance of arsenic nature; that plaintiff partook of foodstuffs prepared from said flour and as a result was made very sick, was confined to his bed for more than six months and was compelled to use crutches for about two years, and that his affliction is likely to be permanent and incurable; that he suffered much pain and could not attend to his business and has suffered loss and damage to his business in the sum of $5,000 already and will suffer an additional loss of $5,000; that he has paid or is obligated in the sum of $100 for medicines, $500 for the services of a physician, and nurse hire in the sum of $500, making in all the sum of $11,100, for which he asks judgment against the defendants.

The separate answers of defendants are substantially alike, except that the answer of the defendant Hartloff, the retail merchant, does not plead the three-year statute of limitations pleaded by the broker Machin as the third defense of his answer. They otherwise both pleaded a general denial, the two-year statute of limitations, contributory negligence, estoppel, and statements negativing any possible carelessness on the part of each defendant as to himself. The plaintiff demurred to all these defenses, except the general denial, and the trial court overruled the demurrers, which in effect left all the defenses above enumerated as competent and proper defenses

to the plaintiff's cause of action. From this ruling the plaintiff has appealed, claiming the trial court was in error holding these several alleged defenses to be proper defenses to his cause of action.

The action was commenced on July 20, 1929, which was one day less than three years from the day on which the plaintiff alleges he purchased the flour from the retail merchant, which apparently was the reason the three-year statute of limitations was not pleaded by him. The two-year statute of limitations pleaded by both defendants would not be applicable to an action for damages upon the breach of an implied warranty, but would be applicable if the action is one in tort, which both defendants claim it is. This is the real controversy in this action around which the other grounds of defense all center, except estoppel. In other words, there can be no defense of contributory negligence unless negligence of defendants is alleged or involved, nor any defense negativing any possible carelessness, unless carelessness is alleged or involved.

The theory of the defendants is that although the petition is on its face an action for damages for breach of an implied warranty, yet the breach of a warranty is a wrong done by the defendants to the plaintiff from which he has suffered these damages, that the purchase, sale and handling of flour that is permitted to contain arsenic is necessarily an act of carelessness and renders the action one in tort in spite of the studied efforts of the plaintiff to avoid it. The defendants earnestly contend it is a tort action and these defenses are proper and applicable, and further that it should be barred by the two-year statute of limitations.

Appellees cite some cases where the action was commenced within less than two years and where the petition contained allegations of negligence and carelessness as well as those necessary to plead a breach of an implied warranty, and some where the pleader waived the tort and endeavored to recover upon the warranty; among them were *Stewart v. Balderston*, 10 Kan. 131; *Tightmeyer v. Mongold*, 20 Kan. 90; *Fanson v. Linsley*, 20 Kan. 235; and *Smith v. McCarthy*, 39 Kan. 308, 18 Pac. 204. The first case above cited was where the petition alleged the taking of money from the plaintiff tortiously which reduced the value of his estate and increased that of the defendant. Both tort and implied contract were recognized, but recovery under the latter was limited to the benefit actually received. The second and third were where there were attempts to waive the tort, but the circumstances lacked the necessary elements for a con-

tract, express or implied, both being cases of naked trespass without intentional or resulting benefit, and they were held to be torts and not actions on implied contracts. In the fourth case it was held where it was alleged that the defendant took and sold the property of the plaintiff that—

"In such a case, where the facts alleged indicate a waiver of the tort and are sufficient to constitute a cause of action on contract, it should be so regarded although some words of the pleadings are adapted to an allegation in an action *ex delicto.*" (*Smith v. McCarthy,* supra, syl. ¶ 2.)

None of these cases tend to show that allegations like those in this case are not sufficient to state a cause of action for damages for breach of an implied warranty nor to prevent the waiving of the tort that might possibly be involved. These cases are also cited to show plaintiff is limited in his possible recovery to the benefit actually received by the defendants in the transaction, which they claim would be the profit they may have made on the sack of flour sold plaintiff, and they reason that the attempt of plaintiff to recover such as he might recover in tort necessarily makes the case an action in tort. Both theories are unsound. The resulting benefit rule as a measure of damages recoverable for a breach of warranty does not apply in cases like this where a property loss is not the basis of the cause of action. Appellees also cite and quote the following from 1 C. J. 1040:

"Where one waives a tort and sues in contract he necessarily waives the entire tort . . . Where a tort is waived and an action brought in contract, the case is governed by the rules and principles applicable to the latter form of action, as in regard to the venue of the action, the statute of limitations applicable, the effect of the death of a party, the form of the judgment, and the measure and amount of damages."

This we think goes well toward sustaining the position of the plaintiff. In a very exhaustive note in 13 A. L. R. 1182 it is said on this subject:

"Actions to recover from the seller of a defective article damages for a personal injury caused in using or attempting to use the article for the purpose for which it was sold are based either upon the ground of breach of implied warranty, or of negligence. In some jurisdictions, at least, the action may be in tort, even though the plaintiff relies on an implied warranty; and in many other respects there is no practical distinction between the right of the injured person as affected by the character of the action."

In *Ryan v. Progressive Grocery Stores,* 255 N. Y. 388, 74 A. L. R. 339, an action for breach of implied warranty by a purchaser

against a dealer who sold him a loaf of bread for immediate consumption as food, which contained a pin, it was held in an opinion recently written by Judge Cardozo that an implied warranty of the merchantable quality of bread sold is breached by the presence of a pin therein, that dealers as well as manufacturers affirm, as to anything they sell, if purchased by description, that it is of merchantable quality. The burden may be heavy. It is one of the hazards of the business. Concerning the amount recoverable it was claimed there, as here, that it was limited to the difference between a good loaf and a bad one, and the court said, "The rule is not so stubborn . . . The measure is more liberal where special circumstances are present with proof of special damages." (p. 295.) There the dealer had notice from the nature of the transaction that the bread was to be eaten. Knowledge that it was to be eaten was knowledge that the damage would be greater than the price.

These views were approved and followed by the supreme court of Connecticut in the case of *Burkhardt v. Armour & Co.,* 115 Conn. 249, in an opinion handed down last July.

The general rule laid down in this state as to amount of recovery is concisely stated in a breach-of-contract case where exchange of property was involved.

"A party entitled to recover on the breach of a contract should be allowed such damages as are the natural, direct and proximate result of the breach." (*George v. Lane,* 80 Kan. 94, 102 Pac. 55.)

The same rule as applied to the purchase of diseased sheep was followed in *Broquet v. Tripp,* 36 Kan. 700, 14 Pac. 227; to the purchase from a dealer of a bad quality of paint which involved the purchaser in legal liability and expense, in *Paint Co. v. Glover,* 47 Kan. 15, 27 Pac. 130; to breach of warranty in the purchase of a tractor, in *Oliver Farm Equipment Co. v. Rich,* 134 Kan. 23, 4 P. 2d 465; to a similar breach of warranty in the purchase of a threshing machine, in *Oliver Farm Equipment Sales Co. v. Patch,* 134 Kan. 314, 5 P. 2d 795, and to the breach of an employment contract in the case of *Rench v. Hayes Equipment Mfg. Co.,* 134 Kan. 865, 8 P. 2d 346. A distinction was made in *Lukens v. Freiund,* 27 Kan. 664, between bran for feeding live stock and food sold for human consumption, as to liability under an implied warranty.

In the case of *Parks v. Pie Co.,* 93 Kan. 334, 144 Pac. 202, al-

though it was a tort action because it resulted in the death of a party eating the unwholesome food, it was said:

"A dealer who sells human food for immediate consumption does so under an implied representation and guaranty that it is wholesome for the purpose for which it is sold.

"A manufacturer who prepares food for human consumption and places it in the hands of a dealer for sale is responsible in damages to the widow of a consumer who procures such food from the dealer and loses his life by partaking of such food." (Syl. ¶¶ 1, 2.)

The case of *Shaw v. Smith*, 45 Kan. 334, 25 Pac. 886, was an action on an implied warranty that flax seed sold for planting and growing a crop would germinate, and when it failed the purchaser was allowed to recover in an action for breach of the implied warranty for all losses necessarily sustained by him by reason of the worthlessness of the seed. The case of *Kaull v. Blacker*, 107 Kan. 578, 193 Pac. 182, was an implied-warranty case concerning flour when being sold was understood to be such as would make bread, and it was held in the opinion:

"It must be conceded that when flour is sold, it is sold for use in making bread; there is, therefore, an implied warranty that it will make bread. It follows that if flour sold will not make bread, the purchaser may return it and collect the damages sustained by him." (p. 583.)

There is no question as to there being an implied warranty that food which is sold for immediate human consumption is wholesome and fit for that purpose (55 C. J. 764), and that the measure of recovery is not limited to the difference in price between good flour and bad flour.

"The measure of damages sustained by a purchaser of unwholesome or unfit food is not confined to the price paid therefor, but properly consists of all damages that were foreseen or could reasonably have been foreseen as likely to result from the particular sale of the food in question." (26 C. J. 789.)

The fact that under the liberal rule a recovery is allowed for the injury and loss that might reasonably be the result from eating such poisonous food does not make the action one in tort.

As to the defenses of contributory negligence and those negativing any possible carelessness, they are only proper defenses to the allegation of negligence.

"The doctrine of contributory negligence rests in the law of tort as applied to negligence, and is governed by the principles peculiarly applicable to that branch of jurisprudence." (45 C. J. 941.)

In an action for damages for breach of implied warranty that the tank would be reasonably fit for the purpose for which it was sold, it was held in *Tank Co. v. Oil Co.*, 108 Kan. 690, 196 Pac. 1111:

"In an action for damages for breach of such a warranty, negligence of the manufacturer is not an issue, and it is no defense that the tank company used reasonable care in selecting material for the tank and in constructing it." (Syl. ¶ 2.)

In a very similar case, *Rig & Reel Co. v. Oil & Gas Co.*, 111 Kan. 37, 205 Pac. 1020, it was held:

"The fact that plaintiff used care in selecting material used in building the tanks did not relieve the plaintiff from liability on its implied warranty

"The defendant was not required to anticipate the negligence of the plaintiff in the construction of the tanks, and the latter cannot lessen its liability for a loss of oil resulting from the defective tank because defendant did not construct embankments to hold the oil which escaped and was lost when the tank collapsed." (Syl. ¶ ¶ 2, 3.)

The defense of estoppel was based upon the statement that plaintiff had not paid for the flour when he purchased it but did so after he had learned of its unfit condition. This allegation contains more of the elements of waiver than it does of estoppel. It was the last act in the transaction, and the defendants were not in any way misled by it to their prejudice and did not rely on it in any subsequent act of theirs, because there were no subsequent acts, so it is not and cannot constitute an estoppel. On the theory of the appellees that the only recovery possible in a case like this is the value of the property sold, or the difference between a sack of good flour and a sack of bad flour, the payment might be in conformity with their argument, but when that is not the rule of recovery, as it plainly is not in this case, it can in no way amount to an estoppel.

"In order to create an estoppel *in pais* the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character or have been induced to alter his position for the worse in some material respect. As otherwise expressed, where no available right is parted with and no injury suffered there can be no estoppel *in pais*. And a *fortiori*, an act clearly beneficial to the person setting up the estoppel, cannot be relied on. In the absence of injury, it is of course immaterial that the other elements of estoppel are present." (21 C. J. 1135.)

"Before the acts of one person can be successfully invoked as an estoppel by another, such other must have relied upon and been prejudiced by the acts of which he complains." (*Dent v. Smith*, 76 Kan. 381, syl. ¶ 1, 92 Pac. 307.)

"Ordinarily a party is not estopped by an act of his which does not mislead his adversary so as to cause him to act to his prejudice." (*In re Town*

of Olsburg, 118 Kan. 440, syl. ¶ 3, 235 Pac. 845. See, also, *Midwest Lumber Co. v. Brinkmeyer,* 125 Kan. 299, 264 Pac. 17; and *Johnson v. Peoples Nat'l Bank,* 130 Kan. 379, 286 Pac. 214.)

As to the liability of the broker, he not having had any direct dealings with the plaintiff, and his defense of the three-year statute of limitations, it may be said he made the sale of the flour to the retail dealer with the same implied warranty and with the full knowledge and definite understanding that the retailer would in turn sell it to the plaintiff, or some other consumer, whereby human life and health would be involved by its intended use. He is liable under his implied warranty, not only to his dealer but also to the purchaser of the flour from the dealer.

". . . so if there is no opportunity for inspection and the buyer relies on the seller to furnish food fit for human consumption, there is an implied warranty of fitness for such purpose. The rule prevails even when the seller knows that the buyer intends to resell to the consumer." (55 C. J. 765.)

The demurrer to the third defense of the broker, being the three-year statute of limitations, was properly overruled, because that is the statute which is applicable to this character of a case, and if the defendant broker is able to show that the action is barred under that statute as to him, it is perfectly right and proper for him to do so. We think the demurrers which were directed to all the other defenses in both the answers except the general denials should have been sustained.

The judgment is reversed and the cause is remanded with direction to sustain both demurrers to all the defenses named therein except the three-year statute of limitations pleaded by the defendant broker.

THIELE, J., not participating.