The Marcel Beauty Shoppe, Incorporated, one of the defendants herein, owns and operates a beauty salon and is engaged in the practice of cosmetic therapy for pay, in the City of Shreveport, Louisiana. In connection with the salon this defendant also conducts what is called the Majestic Beauty School, wherein enrolled students are taught and trained in the art of cosmetic therapy or beauty culture. Mrs. Marguerite G. Metcalf, the other defendant, is the president of and a stockholder in the corporation.
Plaintiff entered defendant's place of business to procure and was given a permanent hair wave. One of the students of the beauty school was assigned to do and did the work necessary to effect the permanent. Plaintiff's hair was injured and she sues to recover damages therefor.
Acting under the erroneous belief that Mrs. Metcalf was the owner and operator of the school and salon, she only was originally impleaded as defendant. The allegations of an exception of misjoinder filed on her behalf revealed that the school and salon were owned and operated by the named corporation. Thereafter plaintiff amended her petition to conform to the true facts, and the corporation was also joined as a defendant. Judgment in solido against it and Mrs. Metcalf is sought. Plaintiff alleges that through the negligence of defendants, their agents and representatives, her hair was "burned and ruined". The specific acts of negligence causing injury to the hair are alleged to be: Application of excessive heat; improper use and application of chemicals to the hair; use of defective mechanical devices in giving the wave; failure to give proper care and attention to petitioner during process of giving the wave.
The elements of damage alleged upon are these: Injury to and loss of hair; mental anguish; humiliation and embarrassment; inconvenience suffered, and cost of having the hair treated.
Defendants severed in their answers. The corporation denied negligence on the part of its agents and representatives as the cause of injury to plaintiff's hair; but averred that if plaintiff suffered any injury for which she is entitled to recover damages, it (the corporation) is alone responsible therefor. This defendant further averred that in the practice of cosmetic therapy it employs licensed and highly skilled operators, modern and efficient machinery and equipment, approved lotions, oils, etc.; that this character of operators, machinery, lotions, etc., was employed in giving the wave to plaintiff; that in all respects the means by which and the manner of giving the wave were of the same character employed in like service to other patrons without ill effects.
It is further pleaded that prior to preparing plaintiff's hair for the wave she was asked if she had used any liquid thereon to bleach it, to which she replied that a month or two previously she had applied peroxide thereto, but not ammonia; that in order to determine if it was prudent to apply the heat necessary to produce the wave, a test was made. This was done by making one curl from a small quantity of the hair and application thereto of the same heat, lotion, etc., that were used to attain the completed wave. This test proved satisfactory. It convinced defendant's operators that the hair was in such condition that a successful wave could be produced. However, when the work had been completed it was discovered that about two inches of portions of the hair, from the ends up, had been reduced to a sort of jelly consistency, which, it is alleged, was due to the fact that peroxide or other bleaching liquid had been recently used on the hair. It is pleaded that had plaintiff disclosed to defendant's agents the true character of the bleaching liquid she had used, the wave would not have been attempted; and, for this reason, the ill effects are chargeable to her.
The answer of Mrs. Metcalf is substantially the same as that of the corporation.
Plaintiff was awarded judgment for $250 against the corporation, from which it appealed. Plaintiff, answering the appeal, prays for an increase in the award and that *Page 455 
Mrs. Metcalf be condemned therefor in solido with the corporation.
Appellant contends, primarily, that there is no liability whatever by it to plaintiff, and, alternatively, that the award is excessive.
[1] It is obvious that plaintiff's suit as against Mrs. Metcalf is not now before us. It was indispensable that she appeal from that part of the judgment rejecting her demand against this defendant if she desired this court to pass on this phase of the suit. The answer to the codefendant's appeal cannot serve as a substitute for appeal in such circumstances. This principle is well settled by numerous decisions of which the following are some: Neelus 3. DeBellevue et al. v. C.P. Couvillion, 3 La. App. 568, and cases therein cited; Thalheim v. Suhren et al., 18 La. App. 46, 137 So. 874; Boutte 
Courrege v. Derokay et al., La. App., 168 So. 39.
The acts necessary to produce a permanent wave of the character given plaintiff are varied. Inter alia, the hair has to be shampooed and dried, blocked in sections for curling, and, as divided, wrapped around metal rods, then steamed by electric energy, followed by removal of the rods and cooling; again dried, and again wet or shampooed, then put in waves or rolled into curls, dried again and combed.
The injured condition of plaintiff's hair was discovered when the last combing took place. Portions of the hair came out when combed, while some of the jellied ends of the strands clung to the comb. There is no treatment to remedy such condition, but to cut it off above the burned sections.
It is clearly shown that the solutions used on plaintiff's hair were of standard and approved quality. It is also proved that the machinery and equipment employed in giving the wave are of modern and up-to-date design and had been giving efficient service to that time. No accidents from the use of such machinery and equipment had been experienced prior to that time, and none has happened since (to the date of trial, eleven months after the accident).
[2] The charges of negligence insofar as they involve the solution used and the machinery and equipment employed are not to any extent sustained by the testimony. If defendant's agents were guilty of negligence as the cause or proximate contributing cause of the accident, such negligence consists of the application of excessive heat to the hair and/or lack of needed care and attention to the customer while the wave was being given.
It is not without some significance that the actual work necessary to give the wave was performed by an undergraduate of the school after being instructed by her superior, and that this student's testimony was not introduced. Her whereabouts, although without the state, was known to appellant's agents. The instructress does not know positively that the student implicitly followed the instructions given her. No other person who testified has such knowledge. Plaintiff's counsel strongly accentuates the fact that the wave was given by one not experienced and skilled in the performance of such an operation.
It is shown that the mechanical apparatus, to which are attached wires to conduct electric current to steam the hair, is equipped with a thermostat, which, when functioning property, automatically trips, thus interrupting the current at the expiration of the period it is determined the heat should be applied. In view of this set-up, and that the machinery and equipment functioned efficiently prior to and after the accident, one could not well believe that an accident of the character involved herein could have happened. Yet, it did happen.
[3] It is unnecessary in order to fix liability against appellant, to determine specifically why the accident happened. Different theories may be advanced to account for it, none of which are conclusive. It is our opinion that the facts of the case warrant application of the doctrine of res ipsa loquitur. The application of this doctrine, together with established facts, makes out a case in plaintiff's favor; and appellant has not overcome the prima facie case thus established.
Appellant's hope to escape liability to plaintiff is based mainly upon the contention that she had a month or two prior to the injury to her hair, used peroxide and ammonia to bleach it. It is argued that she withheld from defendant's agents the fact that ammonia had been put on the hair, and that if she had admitted doing so, the wave would not have been given. It is also contended that the effect of the application of these liquids to her hair, especially ammonia, renders the hair more susceptible to injury from the heat that must be applied to produce a satisfactory wave. But there is no testimony whatever to contradict that *Page 456 
given by plaintiff to the effect that she had not used ammonia on her hair. There is some corroboration of her testimony on this point.
[4] At all events, appellant's agents when advised that peroxide had been used on the hair, were unwilling to proceed with the wave unless and until the usual and customary test was made to determine if the hair's condition was favorable therefor. The test proved satisfactory. Such a test, the record shows, is invariably made by competent beauticians as a means of determining whether a permanent wave should be given and also the appropriate character of solution to be used. If this test was imperfectly or incompetently made, the fault should not be visited upon plaintiff. She was as eager, and more so, to avoid the danger of having her hair burned as should have been defendant's operators. It does not appear, nor is it contended, that plaintiff was warned of the possible ill effects of giving the wave in view of the fact that she had used peroxide on her hair. Therefore, it cannot be held that she assumed the risks incident to the operation.
Plaintiff's hair when damaged was of a shoulder bob style. She habitually wore it this length. It was quite becoming to her. The day following the hair's injury she visited a barber shop and sought the advice of the operator. She was advised that the hair should be cut at a point above the jellied ends. This was done. She was also advised to give the hair oil treatments. Six of such treatments were administered. The day the hair was cut, plaintiff, on the barber's advice, submitted herself to a beautician for additional rehabilitation. This lady, introduced as a witness on defendant's behalf, testified as follows:
"Q. It was testified yesterday that you gave Miss Lanza, the plaintiff, a hot oil treatment? A. Yes.
"Q. Did you do anything else to her hair? A. No.
"Q. Did you curl it? A. No.
"Q. Put it in finger curls? A. Yes.
"Q. How did you do that? A. Pinned the curls.
"Q. Pin curls? A. Yes.
"Q. How long Was her hair? How short can the hair be to pin curl and roll the hair? A. Well, I don't know; but it was at least that long (indicating), because you have to have it that long to pin the curls.
"Q. About two and a half or three inches? A. Yes.
"Q. Was her hair burned to the scalp? A. No. It could not possibly be because the spacers were in.
"Q. How did she look after you put the curls in? A. She looked very pretty.
"Q. Very pretty? A. Yes.
"Q. Was there any reason why she should be embarrassed? A. Well, it don't look like it would be embarrassing; it was just a short hair cut."
Naturally, plaintiff took pardonable pride in the beauty of her tresses and it was also natural for her to have suffered some shock and embarrassment when she suddenly learned of the disaster that had befallen them. That she, for a time, copiously wept, as she says, would be expected. Such reactions on the part of a comely young woman in such circumstances do not prove her to be supersensitive, but, on the contrary, they truly reflect mental suffering and anguish of a degree.
However, many young women with hair of the length and style of plaintiff's when injured, voluntarily have it cut as short as was hers, cut by the barber; and nothing is thought of it. A change in hair length and mode of dressing attracts the friendly attention of associates who casually comment on the transition, but this should not cause embarrassment and/or humiliation.
Plaintiff's hair's condition, prior to being trimmed by the barber, doubtless was repulsive to her, but this was largely compensated for by her winsome appearance after the beautician had given it appropriate service.
Fortunately, neither the roots of the hair nor the scalp was injured to any extent. Hair grows about one-half inch per month. It was not very long before plaintiffs hair attained its former length and attractive appearance.
[5] We have given the question of quantum mature consideration. This element in suits for damages is generally difficult of satisfactory determination. We feel certain plaintiff to a material extent has exaggerated the embarrassment, mental reaction and anguish she experienced. It is our opinion that $150 will well compensate her. Therefore, for the reasons herein given, the judgment appealed from is amended by reducing its amount to $150, and as thus amended, it is affirmed. Plaintiff is cast for costs of appeal; all other costs shall be paid by defendant, appellant. *Page 527