**BURNS CONSTRUCTION COMPANY, Inc.,
a corporation, Plaintiff in Error,**

v.

**Cecil BILBO et al., Defendants in Error.**

**No. 39213.**

Supreme Court of Oklahoma.

April 17, 1962.

Houston, Klein & Davidson, Tulsa, for plaintiff in error.

Rucker, Tabor, Best, Sharp & Shepherd, O. H. "Pat" O'Neal, Tulsa, for defendants in error.

PER CURIAM.

The parties, who appear here in reverse order to their appearance below, will be referred to herein as they appeared in the trial court.

In so far as material to the issues presented by this appeal, plaintiffs alleged in the first cause of action of their amended petition upon which the case was tried, that on July 29, 1954, they entered into a contract in writing with defendant relative to furnishing and installing an air conditioning and heating unit in the East Side Christian Church of Tulsa, Oklahoma; that the agreed consideration for said unit was $30,000.00; that said amount had been paid to defendant; that it was provided in the contract that defendant guaranteed that the unit would operate under required conditions; that upon the unit failing to operate properly, defendant unsuccessfully undertook to repair same; that the unit was worthless and plaintiff was therefore entitled to a return of the $30,000.00 paid therefor. In their second cause of action plaintiff, as an alternative, sought judgment for $11,108.98 as the cost of placing the unit in condition where it would operate properly.

In its answer, defendant alleged that on June 21, 1954, it entered into a written contract with plaintiffs by which it agreed to construct an Educational Building and Chapel and also to furnish and install an air conditioning and heating unit for the agreed price of $188,607.00, $30,000.00 of which was attributable to the last referred-to item; that no plans or specifications were then in existence covering the mentioned unit; that the subsequent contract of July 29, 1954 relative to the unit "was a part and parcel of the" contract of June 21, 1954, in which latter contract it was provided that "GUARANTEES—This

contractor and his subcontractors, without cost to the owner, shall maintain their work against defects in labor and materials for a period of one year from the date of acceptance of the building. This guarantee shall be separate from, but shall run concurrently with any other guarantee hereafter required"; that defendant received a letter dated December 30, 1955, from plaintiffs' attorney to the effect that the unit was not functioning properly; that said complaint was called to the attention of Advance Air Conditioning Company (hereafter referred to as "Advance") who had installed the unit as defendant's subcontractor; that no further communication was received from plaintiffs until June 21, 1957; that defendant had fully complied with its agreements with plaintiffs and owed them nothing.

The plaintiffs' reply to the answer consisted of a general denial.

Following trial of case to the court, judgment was entered in favor of plaintiffs for $6,102.61 as the cost of repairing the air conditioning unit and placing it in condition where it would operate properly. From order denying defendant's motion for new trial which was directed to said judgment, defendant perfected this appeal.

For reversal, defendant contends that the trial court erred in finding defendant "liable under the theory of implied warranty for the reason that there was an express warranty contained in the construction contract limiting it to one year from date of completion"; that said court "erred in finding that the air conditioning system failed by reason of defects in either material or workmanship." Plaintiffs counter the contentions so made.

Defendant contended that the warranty provision quoted in its answer, which is heretofore quoted, appeared in the June 21, 1954, contract. This contract was introduced in evidence as defendant's "Exhibit 2". We are unable to find the mentioned matter in the contract, or, excepting the answer, in the record. We do, however, find this provision in that portion of

the "Specifications" that refer to the air conditioning and heating unit, which specifications are referred to in the contract:

"The entire sysem as herein specified shall be free from defects in material and workmanship, under normal use and service. If within 12 months from date of acceptance by the Owner any part or parts of the system specified is found to be defective in workmanship or material, it shall be replaced free of charge. This includes the furnishing and maintenance of full charge of freon and oil for the entire system."

This provision appears in the July 29, 1954, proposal or contract which, as aforesaid, directly related to furnishing and installing the air conditioning and heating unit:

"The equipment and installation described above will carry a guarantee that the system will operate under the required conditions. The 75 ton compressor will serve all of the new building except the kitchen, snack bar, and the three rooms on the southwest corner of the second floor. * * *"

In the opening portion of the mentioned proposal it is stated that "In accordance with your request to submit a proposal for the heating and air conditioning, we (defendant) propose to perform the following work for the sum" of $30,000.00. In the concluding portion of the proposal it is stated that "If this proposal meets your approval and is acceptable, we will submit detailed drawing and literature for this system for your approval." No reference was made to the June 21, 1954, contract in the proposal.

Following plaintiffs' acceptance of the proposal, defendant, by letter under date of June 30, 1954, advised plaintiffs that defendant was "enclosing air conditioning plans and sections, drawing D-409 and also revisions and addenda to air conditioning specifications to be inserted or added to the general specifications and air conditioning specifications you now have. Also

enclosed is revised drawing D–401 and D–401A showing air conditioning tunnels to be added to the foundation plans. The above drawing, the specifications and a complete set of the building drawings can be given to the air conditioning contractor for bids." The drawings do not appear in the record.

It appears that defendant learned after the June 21, 1954 contract was entered into, that subcontractors would not bid on furnishing and installing the air conditioning and heating unit contemplated by said contract; that subcontractors were probably of the opinion that the planned unit would not satisfy the requirements of the contract; that for said reason the July 29, 1954, contract or proposal was made and accepted. Upon being asked if the mentioned contract was entered into in compliance with the specifications as set out in architect's specifications which related to the original contract one of plaintiffs' officers answered, "Not entirely"; that "The size of equipment installed and other modifications in the amount of equipment installed, were the principal changes."

We are of the opinion that under the evidence the trial court did not err in concluding that the warranty provision of the last contract applied and not that of the first contract. We add, that while defendant may not have wished to impliedly guarantee the unit contemplated by the original contract or if it impliedly guaranteed to limit the guarantee to 12 months, upon the size of the unit being increased and other modifications being made, it may have been willing to impliedly guarantee the unit without limitation as to time. In any event, without mentioning the guarantee set forth in the original specifications, it stated in the last contract that "The equipment and installation described above (which description differed in some material respects to the description embodied in the original contract) will carry a guarantee that the system will operate under the required con-

ditions" and will "serve all of the new building" except certain portions of same.

While we are of the opinion that the trial court could properly have concluded that this last mentioned provision constituted an express warranty of fitness, we will consider the case on the theory adopted by the trial court to the effect that since the provisions of the contract did not exclude the proposition that there was an implied warranty, such a warranty existed.

In Olson v. Sullivan, 109 Okl. 297, 234 P. 634, this was said in the second paragraph of the syllabus:

"An express warranty in a contract of sale usually excludes an implied warranty, but, in the sale of machinery under a written contract of sale in addition to the express warranty contained in the written contract, there is an implied warranty that such machinery or article shall be suitable to perform the ordinary work for which the described article is made or manufactured, and such implied warranty does not contradict nor conflict with the express warranty."

For other authority see C. I. T. Corporation v. Shogren, 176 Okl. 388, 55 P.2d 956, and cited cases.

It is settled law in this jurisdiction that where personal property is sold for a definite purpose made known to the vendor who represents that the property will satisfy that purpose, a warranty of fitness arises upon breach of which the vendor is liable. See Pierce et al. v. Crowl, 200 Okl. 27, 190 P.2d 1003 and cited cases. See also Hales-Mullaly, Inc., v. Cannon, 189 Okl. 613, 119 P.2d 46 where the mentioned rule was applied in a case involving the sale of an air conditioning unit. So, and asssuming that there was not an express warranty of fitness of the unit, there was an implied warranty to that effect.

The Supreme Court of Kansas held in Allen v. Brown et al., 181 Kan. 301, 310 P.2d 923 that the unsuccessful effort of a vendor to remedy defects renders the ven-

dor liable on his warranty. In the instant case, Advance, at the request of plaintiffs, unsuccessfully sought to place the unit in such condition that it would satisfactorily cool the area that it was intended that it would cool. For this service Advance made a substantial charge, and upon plaintiff's refusing to pay the charge Advance refused to do further work on the unit. As heretofore stated, Advance, as a subcontractor, installed the unit and as indicated was acting as defendant's agent in performing the service last mentioned.

Defendant stresses Norton Buick Company v. E. W. Tune Co., Okl., 351 P.2d 731. The warranty there considered was so worded as to exclude the possibility of an implied warranty, which is not true of the warranty in the instant case. For said reason the cited case is not in point of fact nor are other cases cited by defendant in support of its contention that the warranties were so worded as to exclude the proposition that there was not in fact an implied warranty.

■ We turn to defendant's second contention to the effect that there is no competent evidence that the unit was defective or failed to function properly.

There was competent evidence to the effect that around May 1, 1955, the unit was started for the first time; that it failed to cool a portion of the area that it was supposed to cool; that Advance attempted to correct the situation; that it failed to function during June, 1955; that after Advance made repairs, the unit functioned in July and August, 1955; that the unit would not start upon punching the automatic button; that in December, 1955, complaint was made to defendant to the general effect that unit was not functioning properly and that certain defects had appeared; that unit operated three weeks after being started in May, 1956, and then failed; that it failed to function for six weeks; that only partial air conditioning was available in August and September, 1956; that within three or four weeks after being started in May, 1957, the

unit ceased to function; that the motor had "burned", the compressor was damaged beyond repair and the crankshaft to a motor was broken.

A mechanic testified that a piston to the motor had been equipped with a rubber band instead of a metal ring. A consulting engineer testified that the unit had a total of three safety devices, that all three failed to function properly; that had either device worked properly extensive damage to the motor and compressor would not have resulted; that major damage resulted from "the oil leaving the compressor, leaving the crankcase and going into the system and not getting back soon enough."

The evidence shows that mechanic after mechanic worked on the unit during the summer of 1955 and 1956; that it was only after the unit was overhauled and a new motor, condensor and other parts were installed in 1957 at a cost of $4,925.00 that the unit functioned properly. The total amount expended by plaintiffs for work and labor in repairing and overhauling the unit exceeded the amount of the judgment.

Defendant argues that if the unit failed to function properly, it was attributable to negligence and want of care on the part of plaintiffs' employees in operating the unit. The only direct evidence that would tend to bear this out is the testimony of Advance's mechanic who testified that he closed certain valves upon changing the unit in the fall of 1955 so that it would furnish warm instead of cool air; that upon changing the unit back in 1956 he found that these valves were open. This testimony, as we read the record, only tends to show that as a possible reason for an excessive amount of "freon" being lost during the winter of 1955–1956 and does not show that leaving the valves open damaged the unit.

To our way of thinking, there was an abundance of competent evidence showing that as to air conditioning, the unit failed to operate under "required conditions" and failed to satisfactorily serve that portion of the new building that it was guaranteed to

service, which failure was attributable to defects in the unit and installation of same.

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, JOHNSON, JACKSON and BERRY, JJ., concur.

The Court acknowledges the aid of the Supernumerary Judge N. S. CORN, in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, the foregoing opinion was adopted by the Court.