**JOHN A. BROWN COMPANY, Inc.,
Plaintiff in Error,**

**v.**

**Wymanee SHELTON, Defendant in Error.**

**No. 39589.**

Supreme Court of Oklahoma.

Oct. 22, 1963.

Supplemental Opinion on Rehearing
April 7, 1964.

Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, for plaintiff in error.

Miller, Melone, Wilson, Adams & Rogers, by Cleeta John Rogers, and Floyd L. Martin, Jr., Oklahoma City, for defendant in error.

BLACKBIRD, Chief Justice.

This appeal involves an action instituted by defendant in error, as plaintiff, against plaintiff in error and Tint 'N Set, Inc., as defendants, for damages resulting from said plaintiff's purchase in plaintiff in error's retail department store, on March 15, 1958, of a preparation manufactured by the named corporation, and sold by plaintiff

in error for use in dying human heads of hair, under the trade name of: "Tint 'N Set." As the manufacturing corporation was dismissed as a party to the action, upon the trial court's sustaining of said defendant's plea to the court's jurisdiction over it, in our further reference to the parties as they appeared in that court, the word "defendant" will refer only to John A. Brown Company, Inc., retailer of the product.

Plaintiff's alleged cause of action, as set forth in her petition, was for breach of warranty in the sale to her of the Tint 'N Set; and her allegations were apparently drafted to admit of proof of either an express warranty, or an implied warranty of suitability and fitness, or both. She alleged, among other things in substance, that the can of Tint 'N Set she purchased was labeled "blonde", with additional representations on its exterior such as: "YOU CAN SHAMPOO IT OUT EASILY"; but that when she attempted to apply it, the product came out of the can an "anemic 'gold' or 'yellow'"; that when she later attempted to shampoo her hair to remove said substance, the hair became ". . . extremely matted, sticky, stiff and brittle." She further alleged " * * * that further attempts to shampoo the said objectionable product from her hair resulted in large quantities of . . . (it) . . . breaking off near the scalp, thus ruining the permanent . . . she had at that time in her hair, leaving . . . (her) . . . with hair less than one inch long over a portion of . . . (her) . . . scalp. That this condition caused . . . (her) great humiliation, shame and embarrassment and forced her to have to wear a scarf to cover her head whenever she went out in public. * * *" The amount of damages plaintiff sought was $5,000.00 for ". . . loss of hair, ruination of permanent, shame, embarrassment and humiliation."

In its answer, defendant denied generally all allegations of plaintiff's petition, except that it was engaged in the retail sales business, and that plaintiff purchased the Tint 'N Set from it. Additionally, defendant denied specially that it had warranted the hair preparation to plaintiff "in any respect", and denied it was unfit and unsuited for the purpose for which it was sold.

At the trial before a jury, the evidence showed, among other things, that: Before going to defendant's retail store in Capitol Hill, on the day of her Tint 'N Set purchase, plaintiff was wearing her hair only two or three inches long, "on the order" of a "poodle" hair cut; that she had had a "permanent" about three weeks before, but it had been shampooed two or three times since; that she had seen Tint 'N Set advertised on television and thought that, by using it, she could probably see how she would look with blonde hair, and, if she didn't like it, could merely wash the Tint 'N Set out of it, rather than trying to restore the hair's original color by using a hair dye, which latter would be necessary if she tried to make it blonde with a hair bleach; that, on the day in question, before the purchase, two of her friends, a Mrs. Reubell and a Mrs. Wall, were at her home when she decided to go to defendant's store to see about purchasing the Tint 'N Set; that they accompanied plaintiff and sat in the automobile, double parked, while she went into the store; that upon entering the store, she proceeded to its cosmetic department and inquired of a Mrs. Stocker, one of defendant's employees there, if the store had Tint 'N Set; that Mrs. Stocker answered in the affirmative, found a can of it, marked "blonde", on one of the department's shelves, and showed it to plaintiff; that one or both read the statements stamped on the can, including an admonition not to use it on a new permanent until it had been shampooed two or three times. Plaintiff testified that, in discussing her permanent with Mrs. Stocker, the latter " * * * assured me if that was on the can, that it would be good." Plaintiff also testified that Mrs. Stocker said: " * * * that she had never had any complaints about it (Tint 'N Set) * * *"; that all her customers

that bought it were satisfied, as far as she knew. Plaintiff further testified that: "the warranty on the can seemed sufficient along with her (Mrs. Stocker's) words and so I bought the can." According to Mrs. Stocker's testimony, plaintiff asked her " * * * if it (Tint 'N Set) worked and I said that I had seen results from it. That is as far as anything was said."

The evidence further showed that when plaintiff returned to her home with her two aforenamed friends and the can of Tint 'N Set, they read the directions on the can, and all three (in turn) sprayed it from the can onto plaintiff's hair. Plaintiff, as well as the two other ladies, testified that the substance (when sprayed out of the can) was not the right color—that it did not appear blonde, but was a "yellowish-green color"; that plaintiff's hair was also sticky and matted; that the three ladies then decided something was wrong; that they attempted to shampoo the Tint 'N Set out of plaintiff's hair, without success, and that the hair started coming out in the process, until it became real short on parts of her scalp, and her two friends started "teasing" her about having a "burr"; that thereafter, on the same day, plaintiff telephoned defendant's store and told an employee, named Ann Parker, that she was dissatisfied with the color, and said employee told her that, if she would bring the Tint 'N Set can back, its purchase price would be refunded to her; that she did this and defendant refunded her money through Mrs. Shelton; that later the same day plaintiff telephoned the store and told its cosmetic department's manager, Mrs. Butcher, about the matter; that, in fulfillment of her promise to plaintiff over the phone, Mrs. Butcher, after consulting with defendant's store manager, Mr. Morris, made an appointment for plaintiff to come to the store's beauty salon and have her hair shampooed there.

Before the close of the testimony elicited on plaintiff's behalf, her attorney introduced in evidence a photostatic copy of a letter written April 1, 1958, for defendant, by Mrs. Cora Kent, buyer for its cosmetic department, to the Tint 'N Set manufacturer, informing it of plaintiff's purchase, use, and return of a can of its product, and that said can was being returned to it. In referring to plaintiff's experience with the product, the letter stated, among other things: "Her hair was certainly the worst that we ever looked at. It was gummed and matted. * * *"

After plaintiff had rested her case, and defendant's demurrer to her evidence had been overruled, it introduced testimony by Mrs. Lillian Ray, the beauty operator who had shampooed plaintiff's hair in defendant's beauty salon, as aforesaid, and other aforementioned employees, in an attempt to refute plaintiff's evidence, and to show that she had suffered little, or no, injury from her purchase and use of the Tint 'N Set. No report of a chemical analysis, or other comparable direct (as distinguished from circumstantial) evidence, to establish what component, or combination of components, in the subject product accounted for its claimed injurious effects on plaintiff, was introduced by either party.

At the close of all the evidence, defendant moved for a directed verdict, but its motion was overruled. After the case was submitted to it, the jury returned a verdict in plaintiff's favor in the sum of $4,000.00; and judgment was rendered accordingly. After the overruling of its motion for a new trial defendant perfected the present appeal.

 In argument consolidated under the first three propositions, defendant urges for reversal, it first takes the position that the evidence shows plaintiff suffered no physical injury, i. e., injury to any part of her body from the Tint 'N Set, and therefore under this court's decision in Seidenbach's, Inc. v. LaWanda Williams, Okl., 361 P.2d 185, she had no cause of action, or right to recover, for such items of alleged injury as "shame, embarrassment, and humiliation"; that the trial court erred, and failed in its duty to properly instruct the jury on its own motion, by authorizing, in its instruction No. 7, her recovery for such items; and that, instead, said court should

have restricted her recovery to the measure of damages prescribed by Tit. 23, O.S.1951 §§ 34 and 35. Adverting to evidence tending to show that the hair which plaintiff's evidence indicated was broken off by use of the Tint 'N Set, grew back to its normal length in two or three months after the incident, defendant contends that damages for such "temporary" injury, together with the ten-dollar cost of her previous permanent wave, was all plaintiff was entitled to recover, rather than to the assertedly excessive $4000.00 the jury awarded her. We find no merit in this argument. The cited Seidenbach Case is not applicable. Assuming, without deciding (in view of respectable authority to the contrary) that an action for breach of warranty is no different from an action for breach of an ordinary contract, as concerns the matter of damages, hair is as much a part of the human body as the finger nails and the body's natural appendages. No one would contend that a finger nail is not a part of a person's physical entity, or that the breaking, cutting or removal of one, even if unaccompanied by physical pain, suffering, or trauma, is not in the nature of a physical injury. Nor could it be successfully contended that a substance which discolors the skin, or otherwise works a detriment to a person's physical appearance, such as the matting or gumming of hair, so that it could not be combed, arranged, in a normal, natural, or becoming, manner, would be any less physical in the nature of its detriment, than the breaking of a leg, or mutilation of some other part of the body. It has never been the law that, in order to be "physical", an injury must be permanent, or accompanied by suffering. We are therefore of the opinion that in the proof concerning the effect of the Tint 'N Set on plaintiff's hair, there was evidence of physical injury. This, in effect, is virtually conceded by defendant counsel in their argument that plaintiff's detriment from use of the Tint 'N Set was only temporary. Nor did the cited statutory provisions comprise any obstacle to plaintiff's recovery.

Section 35 specifically authorizes recovery for loss incurred by an effort to use an article of personal property for the purpose it is manufactured and sold. "Special" damages may always be recovered in an action of this character if alleged and proved, providing that, as here, they may reasonably be said to have been contemplated by the parties to the warranty, when it was made, or may be regarded as having been made—as in the case of an implied warranty of suitability and fitness. See Wells v. Oldsmobile Co., 147 Or. 687, 35 P.2d 232, 234; Challis v. Harloff, 136 Kan. 823, 18 P. 2d 199; 46 Am.Jur., "Sales", Section 801. (Although our attention has been directed to no previous case in which this court has passed directly on this point, many judgments for such damages have been affirmed by it. See, for instance, Ada Coca-Cola Bottling Co. v. Asbury, 206 Okl. 269, 242 P.2d 417). Upon consideration of the foregoing, we hold that, in this case, plaintiff was not barred from recovering special damages for shame, embarrassment and humiliation, by the rule denying recovery for such items, when unaccompanied by physical injury. We further hold that defendant's complaints concerning the trial court's failure to give instructions specifically limiting plaintiff's recovery to the measure of damages prescribed in Sections 34 and 35, supra, demonstrate no cause for reversing its judgment.

■ Under its Proposition VI, defendant argues that plaintiff relied upon an express oral contract of warranty for her right to recover, and therefore that the trial court erred in giving its instructions numbered 4, 5, and 6, dealing with both implied and express warranties. We do not agree. From our examination of the record, it appears to us that plaintiff's action was predicated on both an express warranty and an implied one of suitability and fitness.

■ Defendant's Proposition IV is as follows:

"The trial court erred in overruling motion of defendant for a directed verdict in its behalf and in overruling its

motion for a new trial, for the reason that there is no evidence that defendant made any express warranty of the product to plaintiff, and for the reason that there is no implied warranty by a retailer of fitness of an article of personal property, such as this hair spray which was sold to the consumer by the retailer in the manufacturer's sealed container."

Under this proposition, defense counsel asserts:

"There is no evidence that there was any harmful ingredient in the hair spray or that it was unfit to be used by a normal person, nor was there any evidence of any damage to plaintiff proximately resulting from breach of any warranty of the hair spray by the defendant, or that the hair spray proximately caused any damage to or loss of plaintiff's hair or any damages complained of by plaintiff."

Under the above quoted proposition, defendant cites no portion of the record, nor authority, to support either the proposition itself, or the above-quoted sweeping assertion made under it. However, under its Proposition V, defense counsel cite quotations from opinions promulgated in various other States to support, by inference at least, the conclusion that plaintiff had the burden of showing, by proof, the particular ingredient of Tint 'N Set which caused her hair to become matted, impossible to comb or arrange becomingly, and/or to break off, and of proving that said product was unfit for use by a normal person. We do not think any of these cases are applicable. They all involve situations not present here. In both the Massachusetts case of Jacquot v. Wm. Filene's Sons Co., 337 Mass. 312, 149 N.E.2d 635, and the Connecticut case of Crotty v. Shartenberg's-New Haven, Inc., 147 Conn. 460, 162 A.2d 513, there was evidence that the plaintiffs were not in normal physical condition, but were allergic. The North Carolina case of Hanrahan v. Walgreen Co., 243 N.C. 268, 90 S.E.2d 392, concerned an allergic reaction. In the Mis-

souri case of Worley v. Proctor & Gamble. Mfg., Co., 241 Mo.App. 1114, 253 S.W.2d 532, there was affirmative evidence that the washing powder involved was not injurious to the hands of normal persons; and the court said this destroyed the presumption, if any, that plaintiff was normal as far as skin irritation and infection was concerned. In the Oregon case of Landers v. Safeway Stores, Inc., 172 Or. 116, 139 P.2d 788, the court was discussing the asserted application of the doctrine of res ipsa loquitur. And in that case, besides pointing out that plaintiff could not prove his case merely by establishing the fact that his hands were in a burned condition and that he had used defendant's product, the court also pointed out that the instrumentality he claimed to have produced his injuries, was in his, rather than in defendant's, exclusive possession. A feature of that case more pertinent to the present discussion, was the presence therein of affirmative evidence that the White Magic involved was "perfectly safe to use" if the directions on the label were followed. In the Maine case of Ross v. Porteaus Mitchell & Braun, 136 Me. 118, 3 A.2d 650, there was evidence from which it might have been regarded as just as probable that the dermatitis, allegedly caused by the dress shields, was actually caused by an allergy, or by the prevention of evaporation under plaintiff's arms, as by any deleterious element in the dress shields. In view of the foregoing, we think all of the cited cases are distinguishable from the one here, where, on the basis of the evidence, there was no reasonable explanation for the gumming and matting of plaintiff's hair (which occurred before the eyes of plaintiff's witnesses) except as a result of being sprayed with Tint 'N Set. This detrimental effect of Tint 'N Set on plaintiff's hair is a sufficient answer to defense counsel's claim that there was no evidence that said "hair spray" caused any damage to plaintiff's hair. Any deficiency of proof as to a causal connection between plaintiff's use of the product, and additional injuries to her hair, such as its breaking off, or falling out,

in spots, would relate only to the amount of damages she was due, rather than to the propriety, or correctness, of the trial judge's action in overruling defendant's challenges to the sufficiency of the evidence. Nor would the insufficiency of the evidence to establish an *express* warranty by defendant be conclusive as to such rulings, because a breach of the *implied* warranty, heretofore referred to, if such warranty is applicable to this case alone, justified submission of the case to the jury. Despite defense counsel's already noted failure to cite any authority under defendant's Proposition IV, pertaining to the applicability of a warranty of suitability and fitness by the seller (as distinguished from the manufacturer or packer) in the instance of products sold in sealed containers (like the can in which the Tint 'N Set came to defendant from Tint 'N Set, Inc.) they cite (among others) one case in the discussion of express warranty under Proposition V that we think should be dealt with. It is Bel v. Adler, 63 Ga.App. 473, 11 S.E.2d 495, which the author of the Annotation at 79 A.L.R.2d 431, cites opposite footnote 20, on page 441 thereof, as authority for the following statement:

> "A seller of cosmetics and similar products has no duty to discover hidden defects in such products when to do so would require him to open and analyze the contents of a sealed package in which the manufacturer of the product has marketed it and in which it is intended to be sold to the ultimate consumer."

After having made a study of the annotation as a whole, and examined many cases pertinent to the point here involved, we are of the opinion that the Supreme Court of our neighboring State of Kansas adopted a view in the case of Graham v. Bottenfield's, Inc., 176 Kan. 68, 269 P.2d 413, that is more in accord with the previous opinions of this court, and with the better reasoned opinions of other courts, than is exemplified in the cited Georgia case. In this connection, see Burns Const. Co. v. Bilbo,

Okl., 370 P.2d 913, 916, and the Annotations at 131 A.L.R. 123. In the Graham case, the court extended the exception to the common law rule of caveat emptor, quite generally applied to food sold in a sealed container, to a hair preparation called "Miss Clairol." We perceive of no sound reason why the same exception should not apply here. And we see no valid reason—despite decisions reaching a contrary result, including the very recent one in Esborg v. Bailey Drug Co., (Wash.) 378 P.2d 298—for not applying to substances, manufactured for use on the body's exterior, the same rule usually applied to food, medicine, bottled drinks, and other products prepared for internal use, or bodily consumption. We therefore hold that the fact that the Tint 'N Set involved here was packed, or put up in a sealed can, or container, by its manufacturer, and that said can remained sealed and intact, when sold to plaintiff by defendant, was no obstacle to her recovery for breach of the implied warranty of suitability and fitness.

■ Under defendant's last proposition it contends that the amount of damages awarded plaintiff in this case was excessive. This contention is based both upon the assumption that said award included damages for shame, embarrassment, and humiliation, and the claim that plaintiff's injuries were only temporary, as her hair regained its original length within two or three months after her use of Tint 'N Set. This analysis is supported by the following statement in defendant's reply brief:

> "We do not feel that citation of authorities is required to show that damages * * * of $4,000.00 * * * are clearly excessive, not supported by the evidence, and result largely from the error of the court in his instructions to the jury * * * particularly * * * Instruction No. 7 * * *".

We have already determined defendant's claims of error in the trial court's instructions to be without merit. The well established rule governing our setting aside of

such allegedly excessive judgments is stated in Jones v. Eppler, Okl., 266 P.2d 451, 48 A.L.R.2d 333, as follows:

> "In an action for damages for personal injuries * * *, the court will not set a judgment aside because of excessive damages, unless the amount awarded clearly shows that the jury was actuated by passion, partiality, or prejudice."

Owing to the special nature of damages plaintiff claimed for shame, embarrassment and humiliation, which the law leaves largely to the jury's common sense, judgment, and/or discretion, without a definite yard stick, or rule of measurement, to go by, this court is virtually restricted to merely ascertaining if there is any competent evidence reasonably tending to support the jury's verdict. Especially is this true, where, as here, the defendant-appellant disdains a remittitur and urges only a reversal. As to permanent injury, plaintiff testified that her hair " * * * still won't hold a permanent and shampoo and set once a week like it did (before)" and " * * * even with a new permanent, it has to be rolled at least every other night." To support her claim for special damages, plaintiff testified that she is a housewife, and the mother of two children; that she is active in club and civic work, such as P. T. A., and Girl Scouts; that, at the time of the injuries here involved, she "was State Secretary for the Oklahoma Federation of Square Dancers", which required her to be out in the public a lot; that she had to continue these activities, so she wore a head scarf; that the incident was given publicity in the newspapers; that she had phone calls, for a "couple or three days later, wanting to know if she was blonde or bald", that people would see her on the street and ask her to take the scarf off her head; and that her friends laughed at her and teased her. Plaintiff's testimony as to the wearing of a head scarf was corroborated by both Mrs. Wall and Mrs. Reubell, and the latter testified to plaintiff's anguish, consternation and/or emotional upset upon first seeing her head in a mirror after the use of the Tint 'N Set.

In view of the aforementioned character of certain items of plaintiff's alleged damages, of the presence of competent evidence reasonably tending to establish that kind of damages, of the absence of any sound, or legal, basis for defendant's claims of error, and of anything in the record to indicate it, we are unable to say that, in arriving at the amount of its verdict in this case, the jury was actuated by passion, partiality or prejudice.

In accord with the foregoing, the judgment of the trial court is hereby affirmed.

WELCH, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.

HALLEY, V. C. J., and DAVISON and JOHNSON, JJ., dissent.

HALLEY, Vice Chief Justice (dissenting).

I do not believe there was any evidence offered by plaintiff to establish her theory of an express warranty by defendant. Defendant's saleslady told plaintiff that the product would be "good" and that she had "never had any complaints" about it. On cross-examination she confirmed that the saleslady did not say anything or tell her anything about Tint 'N Set, or the use of it, that was not printed on the can. The most that can be said of these statements by defendant's saleslady to plaintiff is that there was a "puffing" of the product being sold.

Therefore, I believe that the question squarely presented to us on this appeal is whether the sale of a product, other than food, in a sealed container by a retailer who is not the manufacturer carries with it an implied warranty of fitness.

I would answer the question in the negative. The defendant, a retailer, had nothing to do with the manufacture or packing of Tint 'N Set. The plaintiff asked for the product by its brand name. In a case of this kind the retailer is little more than a

conduit whereby the product passes from the manufacturer to the consumer.

Although there are different views held on this question, (see Annotation at 79 A. L.R.2d 431, especially section 10) I believe the better reasoned cases are those which hold that no implied warranty of fitness binds a retailer where hair preparations, cosmetics or similar products alleged to have caused injury are sold by a retailer to a purchaser who requests it by its patent or trade name.

The recent case of Esborg v. Bailey Drug Company, Wash., 378 P.2d 298, which had to do with a hair tint preparation marketed under the name of "Nestle Streak 'N' Tips", is in point. Although the State of Washington has enacted the Uniform Sales Act, such Act is merely a codification of the common law in its provisions relevant to the question at issue. Since we follow the common law, the case is applicable here. Concerning the absence of an implied warranty by a retailer, the Supreme Court of Washington said in the Esborg case, supra, (378 P.2d at p. 302):

" * * * the instant product, as well as many others of like nature, come to the retailer and consumer alike in sealed, inspection defying containers, frequently on the heels of national, demand-creating, advertising, and occasionally, as in the instant case, without a list of ingredients. They find their way to the shelves of a variety of multiproduct retailers. As a practical matter, it is doubtful that the average retailer stands in any better position, from the standpoint of evaluating their content, than the average consumer.

"Suffice it to say, we have concluded that, where the evidence reveals no more than that the purchaser, relying upon the manufacturer's reputation, voluntarily selects from the retailer's shelf, a brand-name product, other than food, sealed in a container, such transaction does not [cause an implied warranty of fitness or merchantable quality to attach] * * *.

"The trial court erred in granting judgment against the defendant retailer."

In Bel v. Adler, 63 Ga.App. 473, 11 S.E. 2d 495, it is said:

"The petition did not set out a cause of action for breach of an implied warranty. There is no implied warranty by a dealer that an article or goods in a perfect appearing original package, manufactured by a reputable manufacturer, which in practical use in retail trade cannot be examined for imperfections, is suitable for the purposes intended. The only warranty by the dealer, in such circumstances, is that the goods are manufactured by a reputable manufacturer. * * * "

Plaintiff, in the instant case, did not present any evidence that the manufacturer, Tint 'N Set, Inc., was other than a reputable manufacturer. And since there should be no other implied warranty to bind defendant in the instant case, it follows that the trial court erred in failing to sustain defendant's motion for directed verdict.

I dissent.

## SUPPLEMENTAL OPINION ON REHEARING

BLACKBIRD, Chief Justice.

Upon a re-examination of the briefs initially filed in this case, together with those filed with reference to its rehearing, we are convinced that we misconstrued the defendant's arguments concerning the excessiveness of the verdict and judgment in this case. We are now of the opinion that some of such arguments extended beyond defendant's position that plaintiff suffered no physical injury, and encompassed an additional contention that such injury, if any, was only temporary, and that $4,000.00 is an unconscionable amount for that type of injury, unaccompanied by pain or physical suffering, even though resulting in embarrassment, humiliation, and/or mental distress or suffering. We have consequently considered that con-

tention on this rehearing, for the first time and defendant's citations of Higbee v. Giant Food Shopping Center (U.S.D.C., E.D., Va., Alexandria, Va.) 106 F.Supp. 586, and Lanza v. Metcalf (La.App.) 25 So.2d 453, in support thereof. In response, plaintiff seeks to distinguish the Higbee case from the present one on the ground that there plaintiff's physical injury was not permanent, while here she testified at the trial, which occurred two and one-half years after her use of the Tint 'N Set, that her hair still suffered ill effects from it. The full text of her testimony on that subject was as follows:

"Q All right, Mrs. Shelton, what was the condition of your hair after that that you could see in regard to whether it was lustrous and lively looking, like you described it being before this occurred?

"A It was for quite sometime real dead and lifeless. It still won't hold a permanent and shampoo and set once a week like it did.

"Q All right, your hair is now in better shape than it was immediately afterwards, I take it?

"A Certainly.

"Q But, as to the condition it is today compared to the way it was the day before you bought this from Brown's, is it not as good now or better, or how is that?

"A I don't believe it is; even with a new permanent it still has to be rolled at least every other night.

"Q Even with a permanent? .

"A Yes, sir."

In view of the above evidence of improvement in the condition of plaintiff's hair and scalp, and of other testimony showing that nature has provided a gradual and apparently continuing process of replacement of plaintiff's damaged hair with new hair, it is reasonable to assume that little, if any, of the original damage done by the Tint 'N Set in that area still remains. Accordingly, applying the same considerations to the pertinent evidence as a whole, as were applied in the above cited cases, we have concluded that the verdict and judgment in this case was for an excessive amount. Accordingly, we have decided that the sum of $2500.00 will adequately compensate plaintiff for the legal detriment she has suffered from the use of Tint 'N Set involved herein. Therefore, we condition our affirmance of the judgment upon her filing, in the trial court, within 10 days from the filing of this court's mandate there, a remittitur in the amount of $1500.00. If she does this, the judgment will stand in her favor; if she does not, the trial court is directed to vacate its previous judgment overruling defendant's motion for a new trial, and enter judgment sustaining said motion.

The petition for rehearing is hereby denied.

BLACKBIRD, C. J., and WELCH, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.